[No. 4567.]

## A. MORENHAUT ET AL. v. L. D. WILSON ET AL.

52  263
80  630

ABANDONMENT OF MINING CLAIM—INTENT.—Where a party was driven away from his mine by hostile Indians, left his tools in an adjacent mine, and did not return prior to a second location by another party, for the reason that he supposed the Indian hostilities continued, because of the required expenditure of money, and because he believed he had done sufficient work upon the mine to hold it—*Held*, that there was not that intent necessary to constitute abandonment.

FORFEITURE MUST BE PLEADED.—Forfeiture of a mining claim under local mining laws must be specially pleaded, and cannot be shown under the general issue.

TENANT IN COMMON OF MINING CLAIM—MISJOINDER.—A tenant in common with other locators of a mining claim can maintain an action for the recov-

ery of the land without joining his cotenants; and if he improperly join any other person, objection to the misjoinder must be taken in the answer.

JUDGMENT UPON THE FINDINGS.—Judgment will not be ordered upon the findings where they do not furnish sufficient data from which to determine the rights of the parties.

APPEAL from the District Court of the Eighteenth Judicial District, County of San Bernardino.

The action was ejectment, and the findings were as follows:

1. That in November, 1866, E. B. Frink, or some other person, as agent for the persons whose names are attached to the notice of location, a copy of which is attached to the affidavit of S. B. Cox, filed in this cause, posted said notice on a tree at or near the shaft or cut on the lead or mine in controversy.

2. That plaintiffs are, and were at the date of such location, citizens of the United States.

3. That said Frink, as Superintendent, and in the employ of those whose names are attached to said notice of location, entered upon said mine, under said notice, and sunk a shaft thereon from seven to nine feet deep, in the fall of 1866.

4. That said Frink and the laborers employed by him left said mine in the fall of 1866 on account of immediate danger from hostile Indians, and the Indians stole the horses of the company and committed other depredations in the vicinity of said mine.

5. That said Frink, as Superintendent as aforesaid, returned to said mine early in 1867, with men and tools to prosecute work on said lead, and continued to work on said lead until February, 1867, and made a cut about twenty-three feet long through lime rock in the mountain toward the lead, and sunk a shaft thereon.

6. That said company paid said Frink during the fall of 1866, and up to February, 1867, the sum of one thousand dollars to be expended in working and developing said mine.

7. That said Frink and company left said mine in February, 1867, being driven away by Indian hostilities. That they left all their tools at the Morongo Mine, at a distance of between four and five miles. That neither the said Frink nor any of said plaintiffs, nor any one for them, returned to said mine from Feb-

ruary, 1867, until the year 1873, nor have they since performed any labor upon said mine.

8. That the reason said plaintiffs have not returned to said mine or worked the same was on account of supposed Indian hostilities, and in part because of the necessary expenditure of money, and also because they thought that they had performed sufficient work thereon to entitle them to hold it.

9. That at the time of said location, to wit, in the fall of 1866, and until the entry thereon by defendant McFee, in December, 1872, said mine was situated in what was known as the Holcomb Valley Mining District, and that by the laws and regulations of said District it was necessary to perform three days' work annually upon each claim of two hundred feet, in order to hold the same.

10. That from the year 1868, up to and including the year 1873, parties were traveling the country in which said mine is located, prospecting, and at different times during said years miners were engaged in the vicinity of said mine working and developing mines, and bands of sheep and horses were grazed at or near the vicinity of said mine, and during the year 1869, up to and including the year 1873, there was nothing to prevent miners, with the exercise of reasonable prudence and caution, from working upon and prospecting mines at and in the vicinity of said mine.

11. That in December, 1872, defendant John E. McFee and one P. Shelly entered upon the said mine, and on the 12th day of January, 1873, duly located the same according to the rules and regulations of the Arlington Mining District, in which the same was then situated; that in locating said lead they described the lead as commencing at said shaft or cut, and running thence southeasterly seven hundred and fifty feet, and from said cut northwesterly seven hundred and fifty feet, and distinctly marked the same upon the ground from said cut ten degrees south of east seven hundred and fifty feet, and from said cut or shaft ten degrees north of west seven hundred and fifty feet; that they claim three feet upon the surface on the sides of said mine or lead for the purpose of working the same, and placed distinct and visible marks at each corner and also at the middle, or on

each side, opposite said shaft; that in June, 1873, they had the same entered upon the records of the Lone Valley Mining District, in which the same was then situated, and duly complied with the rules and regulations of said last-named district in regard to boundaries and location.

12. That in April, 1873, defendant McFee and P. Shelly partitioned said mine, whereby, by instrument of writing between them in due form, the east seven hundred and fifty feet was set apart, partitioned, and conveyed to defendant McFee, and the west seven hundred and fifty feet thereof was set apart, partitioned, and conveyed to said P. Shelly; and that the defendant L. B. Wilson has, by conveyance in writing in due form, become the owner of the interest of said Shelly in and to that portion so set apart and conveyed to him.

13. That defendant Wilson, and McFee, and the grantors of said Wilson, have at all times complied with and fulfilled the requirements of all laws, rules, and regulations of the districts in which said mine has been situated since their entry thereon; performing labor thereon each year thereafter, and have sunk a shaft thereon, through hard limestone, to the depth of thirty-four feet, and have, ever since December, 1872, been in possession and occupied said mine.

14. That in July, 1873, and again in May, 1874, plaintiffs demanded of defendant McFee the possession of said mine, which was refused.

As conclusions of law it is found that defendants are entitled to judgment, that defendants take nothing by this action, and for costs.

The notice of location was as follows:

"NOTICE.—To all whom it may concern. Notice is hereby given, that we, whose names are hereunto affixed, have this day located, and by these presents do locate and claim two hundred (200) feet each on this mineral lode, lead, or vein, supposed to contain copper and other minerals, to be known as the Piñon Valley Lead, situated in the range of mountains northeast of the Piñon Valley, and commencing at this notice, (on a Piñon tree) and extending three thousand (3,000) feet along the lead

or vein, supposed to be in a northeasterly direction, and that we intend to work the same according to the laws of the Piñon Valley District.

"Signed: George O. Tiffany, 200; E. B. Frink, 200; Charles Jenkins, 200; S. B. Cox, 200; Jesus Garcia, 200; Dr. W. C. Franklin, 200; Osborn & Kohn, 200; O. N. Potter, 200; J. A. Morenhaut, 200; W. K. Potter, 200; W. W. Ward, 200; Daniel Waite Jr., 200; Edmunds, 200; George W. Klein, 200.

" PIÑON VALLEY, California, November 20th, 1866.

 (Endorsed) Filed June 24th, 1874.

"SYDNEY P. WAITE, Clerk."

Judgment was rendered for the plaintiffs, and the defendants appealed.

*Geo. C. Gibbs* and *John D. Bicknell*, for Appellants.

*L. D. Wilson* and *H. C. Rolfe*, for Respondents.

By the Court, NILES, J.:

The plaintiffs, by their entry, and by the work done upon the shafts and cut, had undoubtedly a prior possession of a portion of the mining claims in controversy. This possession would entitle them to recover at least that portion of the mine from the defendants, who were subsequent locators, unless the plaintiffs had either abandoned their possession prior to the entry of the defendants, or had forfeited the claim by a non-compliance with the rules or regulations of the miners of the vicinity.

1. It is not found that the plaintiffs abandoned their claims. On the contrary it is found that they were driven away by hostile Indians, leaving their tools at another mine in the vicinity, and did not return prior to the location by the defendants, partly on account of a supposed continuance of Indian hostilities, and partly because of the required expenditure of money, and because they thought they had performed sufficient work upon the mine to entitle them to hold it. This finding substantially negatives that intent on the part of the plaintiffs necessary to constitute an abandonment. (*Richardson* v. *McNulty*, 24 Cal. 345; *Bell* v. *Bed Rock T. & M. Co.* 36 Cal. 215.)

2. There is no direct finding of the fact of a forfeiture of the claims by the plaintiffs. It was found in substance that during a certain period immediately prior to the entry by the defendants, the plaintiffs had failed to perform the work which the laws and regulations of the mining district declared to be necessary in order to hold the claims. If this could be construed to be a finding of a forfeiture under the mining laws, we should hold it to be a finding without the issues made by the pleadings.

We have held that an abandonment of mining claims by a plaintiff may be shown by the defendant under the general issue. ( *Willson* v. *Cleveland*, 30 Cal. 200.)

The instant an abandonment takes place a vacancy in the possession occurs. The right of possession of the former occupant is absolutely lost, and the land becomes *publici juris*, and free to the occupation of the next comer, whoever it may be. But the occupant of mining claims does not lose his right of possession absolutely by a failure to comply with one or more of the local mining laws, although these laws declare a forfeiture as the result of such non-compliance. He may still remain in possession under his original location, and is entitled to the possession until such time as another shall enter and locate the ground in the manner prescribed by the mining laws, and thereby avail himself of the default of the prior occupant. A defense based merely upon forfeiture does not involve a denial of the plaintiff's possession or right of possession at the date of the defendant's entry. It is analogous to a plea in confession and avoidance — admitting possession and a right of possession in the plaintiff, which would have continued in him but for the defendant's entry and location, which, by virtue of the mining laws, terminated the right. We think this is a special issue, and can be presented only by a special plea.

In the case of *Bell* v. *Brown*, (22 Cal. 681) expressions were used seemingly at variance with the doctrine here announced. But it was unnecessary for the purpose of that decision to consider—and the Court evidently did not consider—the obvious and important distinctions between an abandonment and a forfeiture under the local mining law.

3. It is urged by the respondents that the findings do not

show that all of the plaintiffs had acquired the titles of the original locators. But it appears that some of the plaintiffs were among the original locators of the claims. As tenants in common with the other locators, they could maintain an action for the recovery of the land, without joining their cotenants with them. If other persons were improperly joined as plaintiffs, the objection should have been taken by the answer.

4. The appellant asks for a judgment upon the findings. The only acts of location upon the part of the plaintiff, found by the Court, was the posting of a notice upon a certain tree, upon the mine, claiming three thousand feet from the notice along the lead, in a supposed northeasterly direction. It does not appear that the boundaries of the claim were designated by any visible monuments or marks upon the ground, other than the tree upon which the notice was posted. It is evident that an actual possession of the entire three thousand feet described in the complaint cannot be successfully claimed by virtue of this location. Nor does it appear from the findings that the plaintiffs had that constructive possession which arises from a location made in accordance with the customs or regulations of miners. No local regulations, and no customs or usages, either local or general, affecting the mode or manner of locations, are found by the Court. The extent of the actual possession of the plaintiffs by means of their works upon the ground is also left entirely undetermined. We have not, therefore, the data upon which to order judgment upon the findings, and the case must go back for a new trial.

Judgment reversed, and cause remanded for a new trial.