[Sac. No. 363.    Department One.—May 31, 1898.]

MARY E. WILLIAMS, as Executrix, etc., Respondent, v.
GEORGE HARTER et al., Appellants.

Water Rights—Action for Diversion—Joint Judgment for Damages—
Findings.—In an action to enjoin the diversion of water, and to recover
damages for past diversions, where the answer did not deny the
diversions, and set up a joint right to the use of the water diverted,
no finding of joint liability or joint commission of the acts com-
plained is necessary to support a joint judgment for damages; nor
was it necessary to find that the acts alleged to have been done
by the defendants "were done wrongfully or without right," where
the court found that the plaintiff was the owner of all the water
flowing in the stream, and that defendants committed the acts
charged in depriving her of the use thereof.

Id.—Appropriation—Springs on Public Lands.—All public lands are open
to occupation and settlement by citizens of the United States, and
the water flowing from springs on public lands may be diverted to
other public lands by means of ditches and there used for irrigation
or other necessary purpose, and a right to the same acquired as
against anyone who subsequently obtains title to the land on which
the springs are situated.

Id.—Quitclaim Deed of Ditches—Appurtenant Water Rights.—Where
the springs were the only tributaries of a certain creek, and a ditch
was taken therefrom leading to that creek, and another ditch was
taken out of the creek to lands upon which the water was used, a
quitclaim deed of such ditches by the owner of an interest therein
transferred his rights in the waters of the springs, which were
incidental or appurtenant to the ditches by means of which such
waters had been appropriated, although not specifically mentioned
in the deed.

Id.—Evidence—Declarations of Defendant's Grantor.—Declarations made
by the grantor of the defendants while he was in possession of the
land upon which the springs were situated, relating to the ownership
and right to the use of the water from the springs, and the ditches
leading therefrom, are admissible for the plaintiff as against the de-
fendants.

Denial of New Trial—Refusal of Hearing—Affidavits—Exceptions—
Appeal.—Affidavits made subsequent to the denial of a motion for
new trial setting forth that the motion was arbitrarily denied with-
out hearing or considering the grounds presented and urged in sup-
port thereof, form no part of the record upon appeal from the order,

and cannot be considered upon such appeal. The only mode in which such a question can be brought up for review is to except at the time to the action of the court and to have the facts embodied and settled in a bill of exceptions; and the real and only question is, Did the court err in denying the motion?

APPEAL from a judgment of the Superior Court of Modoc County. G. G. Clough, Judge. Also, from an order denying a new trial. C. L. Claflin, Judge.

The facts are stated in the opinion.

Spencer & Raker, Clarence A. Raker, and F. C. Spencer, for Appellants.

D. W. Jenks, and J. D. Goodwin, for Respondent.

BELCHER, C.—George E. Williams died testate in the county of Modoc in 1891, owning a large tract of land in that county. His will was duly admitted to probate, and Mary E. Williams, his surviving wife, was appointed executrix thereof. As such executrix she brought this action to obtain an injunction restraining the defendants from diverting water from the said lands, and also to recover damages for past diversions.

It is alleged in the complaint that the estate of said decedent now owns and occupies, and it and its grantors and predecessors have owned and occupied for more than twenty years last past, a large tract of land in Modoc county known as the "Williams Ranch," and which is particularly described. The complainant also describes two certain springs of water, their location and capacity, and a ditch leading therefrom, which it is alleged diverts and conveys all of the water of said springs to and upon said land, where the same is used for irrigation, for the watering of stock, and for domestic purposes, and has been used by plaintiff's testator and his grantor for the last twenty years or more, when not prevented from so doing by defendants.

It is further alleged that the grantor of plaintiff's testator, one J. N. Stone, constructed the said ditch and thereby diverted and appropriated, and acquired a right to, all the waters of both of said springs in the year 1871, and that he conveyed all his rights thereto to said testator in the year 1877. It is also alleged that within the year before filing the complaint, which

was on August 25, 1891, the defendants entered upon plaintiff's said dams and ditch, at sundry points, and broke and destroyed the same, and placed dams in said ditch, and have thereby diverted the waters of said springs from plaintiff's ditch and deprived her of the use thereof, and threaten to continue so to do, to her damage, etc.

The defendants filed separate demurrers to the complaint, which were overruled, and then filed a joint answer denying all its material averments, except as to the diversion of the water, and setting up title in themselves to the waters of the said springs: 1. By prescription; 2. As owners of the riparian lands; and 3. By estoppel.

The case was tried, and the court found all the facts in favor of the plaintiff, and gave judgment in her favor, granting the injunction as prayed for and awarding damages in the sum of two hundred dollars. From that judgment and an order denying a new trial defendants appeal.

Appellants contend that the judgment entered against them jointly for two hundred dollars damages was not supported or justified by the findings, for the reason that there is no finding "that the defendants are jointly liable, or jointly committed the acts complained of," or that the acts alleged to have been done by defendants "were done wrongfully or without right."

By their answer the defendants in effect admitted that they had diverted the waters of the said springs from the plaintiff's ditch, and, to justify their acts in so doing, they set up a claim of ownership of the said waters in themselves and a right to use the same "to irrigate their own land," which they alleged they had "occupied and jointly farmed" during the last five years, being "jointly interested in said lands and crops thereon and the whole thereof." This clearly implies that the diversion was by concert of action on the part of defendants, and no special finding to that effect was necessary. The court found that the plaintiff was the owner of all the water flowing from said springs, and that defendants committed the acts charged in depriving her of the use thereof. This being so, a finding that the acts were done wrongfully or without right would have been quite superfluous.

CXXI. CAL.—4

It appears that all of the lands now owned by plaintiff and defendants were public lands of the United States in 1871-72. The springs arose on the north half of the northeast quarter of a certain section 24, and the defendants' grantor, one Cowins, made application to purchase the same, with other lands, in March, 1880, under the desert land act, made full payment in November, 1882, and received a government patent therefor in August, 1890.

Finding 1 is: "That ever since the spring of 1871 plaintiff and her grantor of the ditches and water rights hereinafter mentioned, and her testator, have continuously occupied the southeast quarter of section 12" in the township in which the said section 24 is situated, and at the time this action was commenced she and her said testator had owned the said quarter section, and during all of said time had used the same for raising crops of hay, grain, and vegetables thereon, and that irrigation thereof was necessary to the growing of such crops.

It is objected that Stone did not convey this quarter section to Williams and the latter never acquired title thereto until May, 1884, and that there is no evidence that they made use of the land or raised crops of hay, grain, and vegetables thereon until after the title thereto was obtained. Counsel say: "It is clear from the evidence that plaintiff's testator had no right to the use of the land until 1884. What use he made of it, if any, up to this time was unlawful." There was evidence that both Stone and Williams cultivated the said land and raised crops thereon before 1884, and their use of the land was not unlawful. All public lands are open to occupation and settlement by citizens of the United States, and the law is settled that the water flowing from springs on public lands may be diverted to other public lands and there used for irrigation or other necessary purposes, and a right to the same acquired as against anyone who subsequently obtains title to the land on which the springs are situated. (*De Necochea v. Curtis,* 80 Cal. 397; *Ely v. Ferguson,* 91 Cal. 187.)

Findings 4 and 5 are in regard to the construction of the ditches by Stone in 1871-72, the diversion and appropriation of the waters of the springs through and by means of the same, the continued use thereof afterward by Stone and his grantee,

and the present use by plaintiff of the said ditches and of all the water flowing from said springs.

Conceding, however, that Stone had a good title to this water, it is claimed that plaintiff failed to connect herself with his title, and cannot therefore have the benefit of it. Counsel say: "The deed to a ditch and water right offered in evidence by plaintiff doesn't purport or intend to convey any ditch or water right, as counsel have attempted to prove in this case," and that "the deed is irrelevant and immaterial for the reason that there is no allegation in plaintiff's complaint to support it." The deed referred to purports to convey by quitclaim "one certain water ditch taken out of Montgomery creek on the west side of said creek," etc. "Also one certain water ditch taken from a tributary of Montgomery creek, and taken out of said creek," etc. The springs were tributaries of Montgomery creek, having well-defined channels leading thereto, and, so far as appears, were the only tributaries of that creek. The ditch in controversy was constructed from the channel of one of the springs to the channel of the other, and thence to the lands where the water was used, and it is not shown that there was any other ditch leading from said tributaries. Stone owned an interest in the Montgomery creek ditch and in the ditch leading from the channels of the springs, and it does not appear that he owned any interest in any other ditch or ditches. The ditch from the springs was in use by Stone, conveying the waters thereof to his lands, when the deed was made, and upon the execution of the deed Williams took possession of the ditch and water and used them continuously thereafter until interrupted by defendants. Looking at all the evidence, therefore, we think it sufficiently appears that Stone intended to and did by his deed convey this spring ditch to Williams. But it is claimed that the deed only purports to convey the ditch, and not any right to the waters of the springs, and therefore Williams acquired thereby no interest in the waters flowing from the springs. The answer to this claim is obvious. If Stone owned the ditch, and by means of it had appropriated and acquired a right to the waters of the springs, then the waters were incidental or appurtenant to the ditch, and a conveyance of the ditch carried with it the water right.

Certain exceptions are based upon the admission of evidence as to declarations made by Cowins, defendants' grantor, while he was the owner and in possession of the land on which the said springs are located, relating to the ownership and right to use the waters of the springs and the ditches leading therefrom. That the evidence was admissible is not now a debatable question. Our code provides: "Where, however, one derives title to real property from another, the declaration, act, or omission of the latter, while holding the title, in relation to the property, is evidence against the former." (Code Civ. Proc., sec. 1849.) And the rule upon the subject is thus stated by Field, J., in *Stanley v. Green*, 12 Cal. 148: "That such declarations of the grantor are admissible not only as against himself, but against parties claiming under him, is a familiar principle. The subsequent claimants are considered as standing in his place, and as having taken the title *cum onere*, subject to the same charges and restrictions which attached to it in his hands. It matters not whether the declarations relate to the limits of the party's own premises, or to the extent of his neighbor's, or to the boundary line between them, or to the nature of the title he asserts. If their purport is to restrict his own premises or lessen his own title they are admissible." (See, also, *Bollo v. Navarro*, 33 Cal. 459; *People v. Blake*, 60 Cal. 497; *Sharp v. Blankenship*, 79 Cal. 411.)

The point is made that the judge of the court below, before whom the motion for new trial was heard, arbitrarily denied the motion without hearing or considering the grounds presented and urged in support thereof. To sustain this point two affidavits, made ten days after the motion was denied, are printed in the transcript, and there is also found there a counter-affidavit made still later. These affidavits form no part of the record and cannot be considered. If the defendants desired to have the matter brought before this court for review, they should at the time have excepted to the action of the court and had the facts embodied and settled in a bill of exceptions. Besides, the real and only question is, Did the court err in denying the motion?

We find in the record no valid ground for reversal, and advise that the judgment and order appealed from be affirmed.

Chipman, C., and Searls, C., concurred.

For the reasons given in the foregoing opinion the judgment
and order appealed from are affirmed.

Harrison, J., Garoutte, J., Van Fleet, J.