[Civ. No. 436. Fourth Appellate District.—September 18, 1930.]

CLARENCE WOODSON, Respondent, v. B. M. TORGER-
    SON et al., Defendants; F. J. MACKENZIE et al.,
    Appellants.

W. C. Wilde for Appellants.

Charles B. De Long for Respondent.

HAINES, J., *pro tem.*—This action was brought by respondent Clarence Woodson as plaintiff in the statutory form to quiet title to lots 5 and 6 in block 3 of West Teralta, in the county of San Diego, of which in his complaint he claims to be the owner and to be in possession. One B. M. Torgerson, appellants F. J. MacKenzie and J. C. Dyer, copartners under the firm name of MacKenzie and Dyer, and various others, were made parties defendant, the

complaint alleging that they each claimed some right, title or interest in and to said property adverse to the plaintiff. Torgerson disclaimed. Certain of the defendants made default. Others, including appellants MacKenzie and Dyer, answered. Appellants' answer in brief was that about September, 1926, one John L. Prentice became the fee-simple owner of the property and thereafter, but about that month, entered into a contract with respondent Woodson, whereby he agreed to sell the property to respondent and respondent to buy it from him; that this contract was never carried out and respondent never became the owner of the property; that about December 9, 1926, the said Prentice, with his wife, conveyed the property to Torgerson, to be by him held in trust for Prentice's use and benefit; that about December 20, 1926, appellants filed in the Superior Court of San Diego County an action against Prentice and levied an attachment on Prentice's interest in the property, and on January 5, 1927, recovered a judgment against him for $1337.70, which remains unsatisfied. The present cause was brought to trial in the superior court, which made findings and entered judgment in respondent's favor and against appellants. In the findings all the allegations of the complaint are found to be true, including the allegation that respondent Woodson is the owner and in possession of the property in controversy. It is further found that during October, 1926, Prentice was the owner of the same, that on December 9, 1926, he conveyed it to Torgerson by deed duly recorded; that Torgerson was its owner thence on until on or about February 10, 1928, when by deed regularly made, executed, acknowledged and delivered, he conveyed it to respondent. The findings further recite the levying of appellants' attachment on December 20, 1926, on the property as that of Prentice and the subsequent judgment in favor of appellants and against Prentice, but go on to declare that when the attachment was levied, Prentice had no interest in the property and that it is not true that the conveyance of December 9, 1926, by Prentice and wife to Torgerson was made to enable the latter to hold the record title in trust for Prentice. From the judgment quieting title in respondent Woodson the present appeal is prosecuted.

The evidence shows that in the early fall of 1926 Prentice owned the said lots 5 and 6 and was conducting building operations thereon. Pending these he entered into a contract for the sale of the same to respondent Clarence Woodson and his wife, Elizabeth Anne Woodson, as joint tenants, which contract was made up of reciprocal escrow instructions with the Union Title Insurance Company of San Diego. These provided that the property should be taken by the purchasers subject to a mortgage for $2,500 and a trust deed for $1200 then existing and of record thereon, as well as certain taxes and street assessments. Besides taking the property subject to these encumbrances, respondent Woodson and wife were to pay Prentice through the escrow certain cash. Prentice and wife deposited with the escrow-holder a deed to the two lots, running to respondent and wife as joint tenants. While the escrow was pending, by grant deed dated December 9, 1926, being the same referred to in the answer and findings, acknowledged and recorded the following day, Prentice and wife conveyed the same property, together with considerable other property, to said Torgerson, and Torgerson immediately signed and acknowledged a deed of the property involved in this action to respondent and wife as joint tenants, which was on the same day, December 10th, left with the escrow-holder with written instructions from Prentice and Torgerson that it should be substituted for the deed to respondent and wife, which Prentice had previously deposited there. The escrow was never completed, nor was either of said deeds so successively deposited with the escrow-holder ever delivered to the grantees, respondent Woodson and wife, the reason being, as is stipulated, that the title company could not write a clear certificate because numerous mechanics' and materialmen's liens, aggregating more than the cash payable to Prentice under the terms of the escrow, had been filed against the property, besides the attachment by appellants already referred to. With respect to this, the evidence shows that on December 20, 1926, appellants attached any interest Prentice might then have had in the property, and that in the month following they obtained their judgment against Prentice as alleged and found. It appears, however, that this attachment was levied not only on the property involved in this case, but

on other property in which Prentice had formerly had or claimed some interest and which was involved in the said deed of December 9, 1926, from Prentice to Torgenson, and which Torgerson was apparently interested in having released from any claim consequent upon the attachment and judgment against Prentice. Mr. Kew represented Torgerson as his attorney. Some discussion over the situation occurred between Kew and Mr. Wilde who, as attorney, represented MacKenzie and Dyer, the present appellants, who claim to be attachment and judgment lienholders. After the matter had run on for a considerable time the following transactions, the full reasons for which are not disclosed by the evidence, occurred:

Torgerson and wife signed and left with Kew, Torgerson's attorney, a quitclaim deed of conveyance of the property involved in this case, bearing date February 10, 1928, and running to Woodson and wife. Torgerson testifies that he directed Kew to deliver this deed, though he does not say to whom, or on what terms, or for what consideration.

Kew wrote the Union Title Insurance Company a letter, mentioned at one place in the record as dated February 29, 1928, and at another as dated February 9, 1928, but evidently actually written on or about February 9th, in contemplation of the execution of the quitclaim of February 10th, just referred to, wherein, referring to the other property levied on in appellants' attachment, and which Torgerson wished released therefrom, Kew stated that Wilde "as attorney for *Clarence Woodson* has now agreed to release this attachment on condition that Mr. Torgerson give him a quitclaim deed to lots 5 and 6, block 3, West Teralta, now owned by Mr. Woodson and wife, and upon which Mr. Torgerson has some claim of record", and went on to say that Torgerson had accepted the offer and that he, Kew, was inclosing a quitclaim from Torgerson and wife to Woodson and wife for the said two lots (being those involved in this action). By the further terms of this letter Kew authorized the title company to deliver the quitclaim to Wilde "*as attorney for Clarence Woodson and Elizabeth Anne Woodson*", on obtaining for Torgerson the desired release of the other property from *appellants'* attachment.

On February 11, 1928, Wilde wrote the Union Title Insurance Company inclosing a release from the lien of appellants' attachment and judgment, of the property which Torgerson wished released therefrom, and authorizing delivery thereof co-incidentally with the delivery by the title company to him, Wilde, of a quitclaim from Torgerson and wife to respondent Clarence Woodson and his wife, Elizabeth Anne Woodson, as joint tenants, for the said property involved in the present action.

Respondent Woodson called at the title company's office at some date which is not fixed, and demanded the quitclaim, but failed to get it. The escrow officer of the title company testified that he called Wilde up on the telephone and informed him of Woodson's demand for the deed, but believes that after talking with Wilde on the phone he stated to Woodson that the title company was authorized to deliver it only to him, Wilde, pursuant to Wilde's instructions of February 11th.

At some date not fixed in the evidence, the title company delivered the quitclaim to Wilde, according to his testimony, pursuant to his letter of February 11th, and Wilde, at some date not fixed in the evidence, returned it to Kew.

On February 20, 1928, Kew wrote the Union Title Insurance Company that he was returning it to that concern to be delivered to Wilde, *"as attorney for Clarence Woodson and wife"*, if the title company had received from Wilde a release of appellants' attachment against the property described in the quitclaim, i. e., that involved in the present action, and could issue its guarantee showing that property clear of the attachment.

Nothing further appears as to what has become of the quitclaim and it was not produced at the trial, nor its whereabouts accounted for. Its contents were shown by secondary evidence received without any clear-cut objection, so that error in receiving the same can hardly be assigned. Wilde testified that he was never attorney for respondent Woodson, but, in connection with these matters, represented only the appellants, and respondent Woodson testified that Wilde never represented him.

Woodson testified that he has been maintaining possession of the property and had testified to paying off sundry of the mechanics' and materialmen's liens filed thereon, but

his counsel consented that his statements respecting these payments go out of the record. He testified that he had paid Prentice on account of the cash purchase price of the property only $100, but had been keeping up the payments on the mortgage and trust deed.

We do not understand respondent's counsel to contend that the present judgment quieting title in respondent. to the lots here involved can be sustained otherwise than on the basis of the said quitclaim from Torgerson and wife of February 10, 1928. ■ A plaintiff must recover in an action to quiet title, if at all, on the strength of his own title. (*Schroder* v. *Aden Gold Min. Co.*, 144 Cal. 628 [78 Pac. 20] ; *Sears* v. *Willard*, 165 Cal. 12 [130 Pac. 869].) The situation here presents strange anomalies, for although Torgerson testified that he left the quitclaim with Kew, his attorney, with instructions to deliver it, the evidence shows that the consideration which Torgerson was to receive for it was to move not from respondent and wife, who were named as grantees in it, but from appellants, whose attorney, erroneously described in Kew's letter as representing respondent and wife, was, through the title company, on producing. the consideration, to be given possession of it. Through such attorney the consideration, emanating from appellants and not respondents, was produced, and he thereby got possession of the quitclaim which, as we saw, for some unexplained reason, he returned to Kew. ■ Yet, despite these anomalies, it must, we think, be held that so far as our disposition of the present appeal is concerned, the. finding of the trial court that the quitclaim was delivered, is conclusive on us. Torgerson testified that his instructions were that the quitclaim be delivered. His only interest was in receiving the consideration. This he got. We are unable to say that the fact that it was furnished by appellants was any concern of his. Kew's instructions to the title company were to deliver the quitclaim to Wilde, not as representing appellants, but as representing respondent and his wife, which he was not in fact doing. Respondent was perfectly willing to take the quitclaim, as evidenced by his demand on the title company to deliver the same to him, and it may probably be inferred that he had, in making such demand, permission to represent his co-grantee, who was his wife. The deed ran to the two as joint tenants and,

therefore, if both were in fact willing to take it, either was necessarily the agent of the other to receive it. We have, then, a case where the minds of both grantors and grantees may be said to have met on the proposition that on the former's receipt of the consideration the latter should be entitled to the deed, which was meanwhile to be in escrow. In support of the court's finding, therefore, it must be held that at the moment the consideration was delivered to the title company for Torgerson's use and benefit, the Woodsons consenting to accept the quitclaim, the mutual intent of the grantors and grantees that the transaction should become complete became effective. That, and not any mere question of manual tradition of the paper is the test of delivery. (Civ. Code, sec. 1059, subd. 2; *Hastings* v. *Vaughn*, 5 Cal. 315, 319; *Hibberd* v. *Smith*, 67 Cal. 547 [56 Am. Rep. 726, 4 Pac. 473, 8 Pac. 46]; *Black* v. *Sharkey*, 104 Cal. 279 [37 Pac. 939]; *Whitney* v. *American Ins. Co.*, 127 Cal. 464, 467, 468 [59 Pac. 897]; *Williams* v. *Kidd*, 170 Cal. 631, 638, 639 [Ann. Cas. 1916E, 703, 151 Pac. 1]), and what afterward became of the paper once in legal contemplation delivered, is of no consequence.

In *Black* v. *Sharkey, supra,* the court says (104 Cal., p. 280):

"And it is also well settled that a deed which has always remained in the hands of the grantor may be shown to have been duly delivered. Says Mr. Devlin (Devlin on Deeds, sec. 269): 'Actual manual delivery and change of possession are not required in order to constitute an effectual delivery. But whether there has been a valid delivery or not must be decided by determining what was the intention of the grantor, and by regarding the particular circumstances of the case.'"

Whether or not, if Torgerson had any title to deed to respondent and wife, this delivery left appellants with any rights as beneficiaries of a resulting trust, or what, if any, was the extent of such rights, it would be extremely difficult on the present record to decide, but these questions need not engage our attention, as the judgment for another reason must be reversed, and on a new trial the evidence may be more complete on various aspects of the case, and the findings, even on the matters discussed, will not necessarily be the same.

■ The quitclaim from Torgerson and wife, on which respondent grounds this action, ran, as we saw, not to respondent alone, but to respondent and his wife as joint tenants. It does not appear that such estate, if any, as passed by the deed is, despite the form of conveyance, community property of the Woodsons, and the presumption is that, as to the undivided interest purporting to be conveyed to Mrs. Woodson, it is not (Civ. Code, sec. 164). Therefore we must for our present purposes take whatever interest the Woodsons acquired as having come to them in joint tenancy. True, under section 384 of the Code of Civil Procedure:

"All persons holding as tenants in common, joint tenants, or coparceners, or any number less than all, may jointly or severally commence or defend any civil action or proceeding for the enforcement or protection of the rights of such party."

■ It has frequently been held that one of several cotenants may sue in ejectment without joining his cotenants to regain from a trespasser the possession of the property. (*Touchard* v. *Crow,* 20 Cal. 150 [81 Am. Dec. 108] ; *Mahoney* ·v. *Van Winkle,* 21 Cal. 552; *Morenhaut* v. *Wilson,* 52 Cal. 263.) In an ejectment case, of course, the benefit of the action inures to all the cotenants since the possession of one is the possession of all. The situation is somewhat different with an action to quiet title. In *Messersmith* v. *Smith,* 62 Cal. App. 446 [217 Pac. 105], it was held· competent for one tenant in common to prosecute to judgment an action to quiet title to property, although she failed to join her cotenants as plaintiffs and did not even set up their interests in her complaint, and they were not disclosed until the trial. The report of the case does not make it clear just ·what was the form of the judgment, but under the language of section 384, *supra,* it would seem that the judgment in such a case can hardly with propriety be given, quieting title to any other interest than such as belongs to the plaintiff, or in other words that when a plaintiff who is a tenant in common sues to quiet title to his interest, the decree in his favor must be limited to his own interest. Obviously the question becomes more complicated where the plaintiff is not a tenant in common with another but one of two or more joint tenants and fails to join the other joint tenant

or joint tenants as parties for, inasmuch as the interest of a joint tenant is not severable from that of his cotenants, without destroying the joint tenancy, it is not clear how it would be possible to describe it in a decree without at the same time determining and adjudicating the interests of the other joint tenants not parties to the action.

"Joint tenants are said to be seised *per my et per tout,* by the half or moiety, and by all; that is, they each of them have the entire possession, as well of every parcel as of the whole. They have not, one of them a seisin of one half or moiety, and the other of the other moiety; neither can either be exclusively seised of one acre; but each has the undivided moiety of the whole, and not the whole of an undivided moiety." (2 Blackstone's Commentaries, p. 182; Hammond's Edition, vol. 2, p. 299.)

█ Whatever may be the solution of this difficulty, however, it seems to us clear that it is not competent, where the proof is that a plaintiff and another, not a party to the action, are joint tenants, to enter a judgment decreeing that the plaintiff alone is the owner of the property. There would be, in such an event, a clear variance between the proofs and the judgment. If this were the only error shown in the record we should be called upon to decide the question just suggested as to what form a judgment should take in such a case, since the evidence would sustain some judgment in favor of the plaintiff, and it would become the duty of the appellate court, instead of reversing the judgment rendered, to modify it to conform to the proofs. We are of the opinion, however, that the record in this case discloses error in rejecting certain proffered evidence, requiring a retrial of the case, and as opportunity will thus be afforded for the amendment of the complaint by bringing in Mrs. Woodson, there seems to be no necessity for us to decide what form a judgment for the plaintiff should take in her absence.

█ Appellants offered on the trial to prove by the testimony of both appellants MacKenzie and Dyer that a few days after December 20, 1926, they were present in Mr. Wilde's office, that both Prentice and Torgerson were there; that a talk ensued in which, in response to inquiries put to them about the purpose of the conveyance of December 9, 1926, it was "substantially said by and between Prentice

and Torgerson'' that the purpose of the conveyance of the property involved in this action, as well as the other property carried by the deed of December 9, 1926, from Prentice to Torgerson ''was to avert or avoid the threatened claims of liens and claims . . . and attachments'' against the property in Prentice's name at that time; also that they stated that ''it was considered that if the title was placed in the name of Torgerson . . . it would enable Prentice to deal with it without its becoming . . . further involved and incumbered with liens and claims against it, and that Torgerson would make a conveyance of it and carry out the transactions in connection with it that were made by Prentice or negotiated by Prentice'' both as to the property under contract of sale to Woodson and as to the other properties involved in the conveyance to Torgerson, on which other properties there were five or six houses in course of erection. To this offer an objection was sustained by the court.

It is to be recollected that at the time that the statements were, according to the offer of proof, made, though Prentice had deeded the property affected to Torgerson, Torgerson had not yet executed the quitclaim under which respondent now claims. The rule of evidence involved is that stated in section 1849 of the Code of Civil Procedure, that:

''Where . . . one derives title to real property from another the declaration, act, or omission of the latter while holding the title, in relation to the property, is evidence against the former.''

This principle is so constantly applied that it is needless to cite at length the decisions in this state which deal with it. (See, however, e. g., *Stanley* v. *Green,* 12 Cal. 148; *Sharp* v. *Blankenship,* 79 Cal. 411, 413 [21 Pac. 842]; *Williams* v. *Harter,* 121 Cal. 47, 52 [53 Pac. 405].)

It is, of course, clear that Prentice's statements made in course of this alleged conversation were properly excluded, since, on the face of the record, he had, at that time, parted with the title, but the court did not limit its ruling to excluding his statements, but excluded those of Torgerson as well. ▮ This was error, and as the proffered testimony went to the purpose and effect of the whole transaction, evidenced by the deed of December 9th, which was of the essence of the case, and the finding went against appellants on their claim that Torgerson was but a secret trustee for

Prentice, such error must be presumed to have prejudiced appellants' rights.

It is true, as said by respondent, that appellants did not, in terms, offer to prove either that at the time of the conveyance of December 9th Prentice was insolvent, or that the conveyance was without consideration. But the allegations of the answer were not these, but that the conveyance was on a trust for Prentice. If such was the fact appellants were entitled to prove it.

It must, indeed, be said that the allegations of the answer are not very circumstantial and do fall short of alleging a fraudulent conveyance to Torgerson, that it cannot be ascertained from them what were Prentice's financial circumstances when he made it, or that it was without consideration, or that it was made. for the purpose of defeating his creditors, or was in any way a fraud. Strictly speaking, therefore, the authorities cited by appellants relative to fraudulent conveyances, are inapplicable to the issues framed. ■
Yet if, as was claimed, Prentice, after the conveyance, retained a beneficial interest in the property, he retained something which could be attached.

"A secret trust or confidence created for the benefit of the grantor may be express or implied from extrinsic circumstances and may be proved by parol." (27 C. J., 608, and cases cited.) The interest of a debtor, legal or equitable, in property standing of record in the name of another, is subject to attachment. (Code Civ. Proc., sec. 542, subd. 2; *Fish* v. *Fowlie*, 58 Cal. 373.)

The judgment is reversed and the cause remanded for new trial and the trial court is directed to permit respondent, if he shall be so advised, to amend his complaint by making Elizabeth Anne Woodson a party.

Cary, P. J., and Marks, J., concurred.