THE DAVENPORT FIRE INS. CO. v. MOORE.

1. **Insurance** : LIABILITY UPON PREMIUM NOTE. Where the charter of an insurance company authorized it to conduct its business wholly or in part upon the mutual principle, or wholly or in part upon the cash principle, and a policy recited that the insurance in question was made in consideration of a certain specified sum as cash premium, and an instalment note payable absolutely at specified times, *held,* that recovery could be had upon the notes without proof of losses and an assessment as upon the mutual plan.

2. ——— : COMPANY MAY REINSURE. It is competent for an insurance company to reinsure upon its risks, and it may transfer its property, including premium notes, as a consideration therefor.

3. ——— : CONSTRUCTION OF STATUTE. A failure to comply with the provisions of chapter 138, *Laws of 1868,* will *not* prevent a company from indemnifying itself by reinsurance for risks already assumed.

*Appeal from Black Hawk Circuit Court.*

THURSDAY, APRIL 24.

On the 15th day of February, 1876, the plaintiff commenced this action as the assignee of a note executed by the defendant, as follows :

"For value received on policy No. 1503, dated the 5th day of September, 1868, issued by the Cedar Valley Insurance Company, of Cedar Falls, Iowa, I promise to pay said company the sum of

"Six dollars on the 1st day of September, 1869;

"Six dollars on the 1st day of September, 1870;

"Six dollars on the 1st day of September, 1871;

"Six dollars on the 1st day of September, 1872;

without interest. By default in the payment of either of the above instalments, each of the others shall become due."

The defendant answered as follows:

"1. Admits the execution and delivery of the note.

"2. Avers that he made the same to the Cedar Valley Insurance Company in consideration of a policy of insurance marked 'Schedule A,' and annexed hereto, and made a part of the answer.

"3. Avers that said insurance company, at the date of said note and policy, was a corporation organized under the laws of this State, and was then doing business under articles of incorporation, a copy of which is attached, marked 'Schedule B,' and made part of the answer.

"4. That on and prior to the 1st day of January, 1869, the capital stock of said company was less than fifty thousand dollars, and said company had not at that date agreements of insurance with two hundred persons, nor did the premiums upon all its agreements for insurance amount to twenty-five thousand dollars.

"5. That said company, at and prior to the said 1st day of January, 1869, had no capital of any kind, except premium notes received by it from parties insured in said company, which notes were of the same general character as that described in the petition, and were received in consideration of policies of insurance issued by it, of the same character as that set forth herein. A large proportion of said policies were in force on the day aforesaid.

"6. That said company never complied with any of the provisions of chapter 138, Laws of Iowa of 1868, and after the 1st day of January, 1869, ceased doing business as an insurance company.

"7. That plaintiff is an insurance company organized under the laws of this State prior to January 1, 1869, and prior to that date did comply with the provisions of chapter 138, Laws of Iowa, 1868.

"8. That April 23, 1869, the Cedar Valley Insurance

Company transferred, so far as it had power or authority, all the premium notes received in the course of its business to the plaintiff, including the note in suit, in consideration of which plaintiff undertook and agreed to assume and carry all risks theretofore assumed by said Cedar Valley Company, and to indemnify said company against all claims for losses under or by virtue of any of its policies of insurance theretofore issued, which transaction is the only basis of plaintiff's right or title to the note in question.

"9. That defendant was not a party to said transaction, and never in any manner authorized or assented thereto, but from the time such transaction came to his notice has wholly refused to accept of any insurance by plaintiff, and has wholly repudiated the action of said the Cedar Valley Insurance Company in the transaction aforesaid with plaintiff.

"10. That defendant fully paid the Cedar Valley Insurance Company for carrying the risk assumed in its said policy aforesaid, for one year from the date thereof, at the time of the delivery of such policy, and he avers that, by its failure to comply with the provisions of chapter 138 of Laws of 1868, so as to be able to continue its said business, it forfeited all right to the subsequent instalments secured by said note, of which fact plaintiff had notice at the time of its pretended purchase.

"11. Defendant, further answering, avers that the policy of insurance so issued to him by the Cedar Valley Insurance Company was issued upon the mutual plan, and none other; that said company never organized as a stock company; that it never had any capital stock with which to transact business as a stock company, nor had it any means with which to pay losses, except the premium notes of its policy holders, of like character with that in suit; and he avers that no losses have happened to those insured in said company, and no assessments have been made upon the several parties insured so as to entitle said company or its assigns to maintain any action at law upon the note in suit.

"12.   Defendant further states that the pretended transfer of the note in question was wholly outside of the authority of said the Cedar Valley Insurance Company, after it had failed to comply with the provision of chapter 138, Laws of 1868, and was a fraud upon its policy holders, who were thereby rendered wholly remediless, as against said company, for any loss that might occur to them, for the reason that such assignment was a transfer of all the property of said company, all of which was well known to plaintiff at the time of such pretended transfer."

The policy of insurance attached to this answer has the following heading:

"THE CEDAR VALLEY INSURANCE COMPANY.
"CHARTERED A. D. 1860.
"*MUTUAL.*
"CEDAR FALLS, IOWA."

It contains, with many other of the ordinary provisions of a policy of insurance, the following:

"The Cedar Valley Insurance Company, in consideration of six dollars cash premium, and an instalment note of twenty-four dollars, do insure Lorenzo Moore, during the term of five years.

"This company shall not be liable for any loss if default shall have been made by the assured in the payment of any instalment of premium due upon the instalment note aforesaid of the assured, for the space of thirty days after such instalment shall become due by the terms of such note; *provided, however*, that on payment by the assured, or assigns, of all instalments of premium due under this policy and the instalment note given thereon, the liability of the company shall again attach, and this policy be in force from and after such payment.

"If the cash premium shall be unpaid in such case this policy shall be void, and assured shall not be entitled to recover from the company any loss or damage which may occur to the prop-

erty hereby insured.   When a promissory note is given by the assured for the cash premium, it shall be considered a payment, provided' such note is paid at or before maturity; but it is expressly understood and agreed by and between the parties hereto that should any loss or damage occur to the property hereby insured, and the note given for the cash premium, or any part thereof, remain unpaid and past due at the time of such loss, then this policy shall be void.

"It is further provided that no attempt, by law or otherwise, to collect any note given for the cash premium, or any instalment of premium due upon any instalment notes, shall be deemed a waiver of any of the conditions of this policy, or shall be deemed in any manner to revive this policy; but upon payment by the assured, or his assigns, of the full amount due upon such note, and costs, if any there be, the policy shall be thereafter in full force; and if, in the opinion of the company, an over-insurance exists, or the risk be increased by any means, or if from any cause the company elect so to do, the company reserves the right of canceling the policy by paying to the assured the unearned premium, if any there be.   This policy is made and accepted upon the above express conditions, and the charter and by-laws of the company, which are to be resorted to and used to explain the rights and obligations of the parties hereto in all cases not herein otherwise specially provided for, and which are hereby made a part of the policy." .

In no place in the policy is the assured denominated a member of the company, nor does the policy in any place speak of any assessment to be made or required upon any note of any description.   The policy in no place contains the words "premium note."

The charter, which is attached as an exhibit to the answer, contains, among other things, the following provisions:

"Said corporation shall have power to make insurance, of every name and nature, against loss or damage by fire, water, or any other cause.   It may also insure the lives of its mem-

bers and others. It may also make insurance on live stock against accident, death or disease; and may cause itself to be insured, in whole or in part, as to any risk taken by said company. The capital stock of the corporation may consist of such premium notes and cash premiums as may be taken from time to time for policies of insurance issued by said company, not exceeding two million dollars; and the directors may, for the better security of its policy holders, at any time add a cash or subscribed capital of any amount, not exceeding one million dollars, to be secured and liable for the indebtedness of the company, as the by-laws of the corporation may provide.

"The business of said corporation may be conducted wholly or in part on the mutual principle, or wholly or in part on the cash or stock principle, as the directors may determine.

"At the annual election for directors each member shall be entitled to one vote for each one hundred dollars by him, her or them insured.

"The members of this company shall be and are hereby bound and obligated to pay their proportion of all losses and expenses happening and accruing during the time for which their policies were issued, to the amount of their premium note or notes and cash premium, and no more.

"The said company may divide applications for insurance into two or more classes, according to the degree of hazard, or the nature and kind of insurance to be effected; and the premium note shall not in such case be assessed for the payment of any loss, except to the class in which it belongs. All and every person or persons who shall at any time become interested in said company by insuring therein upon the mutual plan, and also their respective heirs, executors, administrators and assigns continuing to be insured therein, shall be deemed and taken to be members thereof, for and during the term specified in their respective policies, and no longer; and shall at all times be concluded and bound by the provisions of this chapter.

"The directors of this company may make an assessment upon the premium notes given to said company, whenever they, in their judgment, shall think it necessary or expedient, in order to be able to meet its liabilities with promptness."

The plaintiff filed a demurrer to this answer, which the court sustained.

The defendant elected to stand upon his answer, and judgment was rendered for the plaintiff. The defendant appeals.

*Boies & Couch,* for appellant.

*Hemenway, Polk & Thorp,* for appellee.

DAY, J.—I. It is claimed that the insurance in question was effected upon the mutual plan, and that there

1. INSURANCE: liability upon premium note.

can be no recovery without proof of losses, and an assessment of the amount payable by defendant. The answer alleges that the policy in question was issued to the defendant upon the mutual plan, and none other. If this allegation stood alone, it would be admitted by the demurrer. But to the answer copies of the charter of the company and of the policy of insurance are attached. These become parts of the answer, and in connection with the note sued on, the execution of which the answer admits, must be considered in determining the effect to be given to this allegation. The charter of the company authorizes it to conduct its business wholly or in part upon the mutual principle, or wholly or in part upon the cash principle. The policy recites that the insurance is made in consideration of six dollars cash premium, and an instalment note of twenty-four dollars. The liability of the company is made to depend upon the payment of the instalments of the note as they fall due. Nothing is said about an assessment of losses to the insured. The note sued upon is payable absolutely in instalments, at specified times. We think the character of the insurance must be determined by the charter, the note and the policy, and that these show that the insurance in

question was not effected upon the mutual plan. The allegation in the answer that the insurance was made upon the mutual plan is contradicted by the admissions in, and the exhibits attached to, the answer, and is not, therefore, well pleaded. It is not admitted by the demurrer. The authorities cited by appellant upon this branch of the case (*White v. Haight*, 16 N. Y., 310; *Mygatt v. New York Protection Insurance Co.*, 21 N. Y., 52; and *Howland v. Edmonds*, 24 N. Y., 307) do not, we think, support a view contrary to that above announced.

II. The answer alleges: "that April 23, 1869, the Cedar Valley Insurance Company transferred, so far as it had power or authority, all the premium notes received in the course of its business to the plaintiff, including the note in suit, in consideration of which plaintiff undertook and agreed to assume and carry all risks theretofore assumed by said Cedar Valley Company, and to indemnify said company against all claims for losses under or by virtue of any of its policies of insurance theretofore issued, which transaction is the only basis of plaintiff's right or title to the note in question."

2. ——: company may reinsure.

Appellant urges that, independently of chapter 138, Laws of 1868, the Cedar Valley Insurance Company had no authority to transfer the note in question to plaintiff, in the manner above alleged. The argument of the apppellant is based upon the idea that the Cedar Valley Insurance Company is simply a mutual company. As, in the view we take of the case, the insurance of defendant was not effected under the mutual plan, the reasoning of the appellant is not applicable. It is true that the Cedar Valley Insurance Company could not, without the consent of the defendant, transfer its liability to the plaintiff, and compel the defendant to accept the plaintiff as his insurer. But the charter of the Cedar Valley Insurance Company authorizes it to cause itself to be reinsured as to any risk taken.

It is competent for an insurance company to effect rein-

surance upon its risks. Flanders on Insurance, 30; Angell on Fire and Life Insurance, 20; Clarke on Insurance, 263. What the answer alleges to have been done by the Cedar Valley Insurance Company amounts, in legal contemplation, to reinsurance upon its risks. As the Cedar Valley Insurance Company had the right to effect such insurance, it was competent for it to pay the plaintiff for the risk assumed by the transfer to plaintiff of any property to which the said company had the absolute right. As the Cedar Valley Insurance Company owned the note in question, we can see no valid reason why it might not transfer the note to plaintiff.

III. It is urged further that the transfer is invalid under chapter 138, Laws of 1868. Section 3 of this act provides

3. ——: construction of statute. that no joint stock company shall be incorporated with a smaller capital than fifty thousand dollars, of which not less than twenty-five thousand dollars shall be paid up in cash; and that no company on the mutual plan of insurance shall commence business until agreements have been entered into for insurance with at least two hundred applicants, the premiums upon which shall amount to not less than twenty-five thousand dollars, of which at least five thousand dollars shall have been paid in actual cash. Section 26 provides that any insurance company, before the passage of the act, organized under the laws of this State, shall conform to the provisions of the act by January 1, 1869, and when necessary shall change its charter to comply with said act, and makes it a penal offense for the officers or agents of a company to do business without complying with the act. Section 28 makes it the duty of the Auditor of State, when he shall deem it expedient, to appoint one or more persons to examine into the condition of any insurance company doing business in this State, and authorizes him, when it shall appear from such examination that the assets are reduced or impaired more than twenty per cent below the paid-up capital stock required by the act, to communicate the fact to the Attorney General, whose duty it shall be to apply to the

Supreme Court, or a judge thereof, for an order requiring said company to show cause why their business should not be closed; and, in case it shall appear that the interests of the public require it, the court or judge shall decree a dissolution of the company and a distribution of its effects.

The answer alleges that on and prior to January 15, 1869, the capital stock of the Cedar Valley Insurance Company was less than fifty thousand dollars, and that it did not have agreements of insurance with two hundred persons. Because of the failure of said company to comply in this respect with the provisions of chapter 138, Laws of 1868, it is claimed by the appellant that it was not competent for the said company to effect reinsurance, or transfer the note in question in consideration thereof. It does not, however, appear that any steps were taken, as authorized in the act, to close the business of the Cedar Rapids Insurance Company. The law itself did not have that effect. It made it penal for the officers of the company to do any more business as an insurance company. They could not, until the law was complied with, take any more risks. But they were not, we think, inhibited from indemnifying the company by reinsurance for risks already assumed. The taking of such reinsurance was not, as we understand it, violating the provisions of the act as prescribed in section 28 thereof.

We are of the opinion that the demurrer to the answer was properly sustained.

AFFIRMED.