BERTHA L. WEIL, Defendant in Error, *vs.* THE FEDERAL LIFE INSURANCE COMPANY, Plaintiff in Error.

*Opinion filed June 16, 1914—Rehearing denied October 7, 1914.*

1. PRACTICE—*party need not wait until after final judgment before presenting bill of exceptions in municipal court.* Section 38 of the Municipal Court act, providing that a bill of exceptions may be tendered to the judge at any time within sixty days after the entry of a final order or judgment, does not require a party to wait until after final judgment before presenting a bill of exceptions with reference to motions and rulings thereon and having it settled.

2. SAME—*what is a proper method of bringing rules of municipal court to attention of Supreme Court.* Attaching to the bill of exceptions a pamphlet containing rules of the municipal court of Chicago, certified by the judge, is a proper method of bringing such rules to the attention of the Supreme Court as a part of the record, but only such rules as are applicable to the case should be so certified.

3. SAME—*when term "practice" will be held to include "pleadings."* While the term "practice" does not in a strict sense include "pleadings," yet as used in section 34 of article 4 of the constitution and in paragraph 9 of section 28 of the Municipal Court act it was intended to include pleadings, and under said paragraph 9, providing that the judges may by rule provide that the "practice" in cases of the first class shall be the same as is provided in the act for cases of the fourth class, a rule is authorized dispensing with a declaration in a first-class case, notwithstanding a declaration is expressly provided for in the act.

4. INSURANCE—*a contract strictly one of re-insurance is merely one of indemnity.* A contract which is strictly one of re-insurance is merely one of indemnity of the first insurer against the risk which it has already assumed, and it creates no privity of contract between the re-insurer and the person insured.

5. SAME—*when there is no privity of contract between insured and re-insurer.* Unless a contract of re-insurance either expressly stipulates that the original insured person can bring suit against the re-insurer or there is something in the contract indicating such intention, there is no privity of contract existing between the insured and the re-insurer.

6. SAME—*when insured may sue the re-insurer.* Where the re-insurer undertakes, in its contract of re-insurance, to assume and guarantee the policies of the first insurer, it undertakes to discharge the obligations of the first insurer to its policyholders and the insured may sue the re-insurer.

7. SAME—*the insured may accept the obligation imposed upon the re-insurer by its contract.* An insurance company cannot, by a contract of re-insurance, transfer its liability to the re-insurer and compel a policyholder to accept the latter as the insurer, but the insurer has an election to repudiate the transfer if he sees fit or to accept the obligation imposed upon the re-insurer by its contract.

8. SAME—*clause making policy incontestable after one year is valid.* A clause in an insurance policy that it shall be incontestable after one year from the date of its issue, provided the premiums are duly paid, is a valid provision, and after one year bars the defense that the policy was procured by fraud.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

CHARLES A. ATKINSON, and JOSEPH P. MAHONEY, for plaintiff in error.

MOSES, ROSENTHAL & KENNEDY, (WALTER BACHRACH, and HENRY H. KENNEDY, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 3, 1911, defendant in error, Bertha L. Weil, brought two suits in the municipal court of Chicago against plaintiff in error, the Federal Life Insurance Company, each

suit being on a policy issued by the Inter-State Assurance Company for $5000, dated January 8, 1909, insuring the life of Louis N. Weil, who died on December 22, 1910, and a contract of the plaintiff in error dated December 31, 1909, re-insuring the policies of said Inter-State Assurance Company. On March 25, 1911, the two suits were consolidated by order of the court. On motion of defendant in error the court struck from the files the amended affidavit of merits of plaintiff in error, and after hearing the evidence entered judgment against the plaintiff in error for $10,133.33 and costs. The Appellate Court for the First District affirmed the judgment, and a writ of *certiorari* was allowed for the purpose of reviewing that judgment.

In a protracted effort to settle the issues in the case there were numerous motions and exceptions to the rulings of the court thereon, which were embodied in a bill of exceptions filed April 6, 1911, before final judgment. It is contended that this bill of exceptions is not a part of the record because the defendant did not wait until after final judgment against it before presenting the bill of exceptions and having it settled. The argument is on the ground that section 38 of the Municipal Court act provides that a bill of exceptions may be tendered to the judge at any time within sixty days after the entry of a final order or judgment, which precludes the settlement of the bill of exceptions before judgment. Every bill of exceptions purports, on its face, to be taken at the time of the ruling excepted to, and it is necessarily in that form, but as a matter of convenience, and in fact often from necessity, a practice was established for extending the time beyond the entry of final judgment for the presentation of the bill. The statute relating to the municipal court fixes such a time and authorizes an extension beyond the time by the judge where necessary, but it does not require a party to wait until after final judgment. The bill of exceptions was properly taken and is a part of the record.

Counsel for both parties understand that the Municipal Court act, together with the rules of the court, have burdened litigants with the necessity of preserving the rulings of the court, and exceptions thereto, in settling the issues, which under the practice of other courts are settled by demurrer and preserved as part of the record without a bill of exceptions. This was a case of the first class, and the bill of exceptions shows that the defendant filed a motion that the court dismiss the suit for a failure to file a declaration and the court denied the motion. Appended to the bill of exceptions is a pamphlet containing the rules of the municipal court, certified by the judge, which is a proper method of bringing the rules to the attention of this court and making them a part of the record, although only rules applicable to the cause should have been so certified. Among the rules is one abolishing pleadings in cases of the first class. Section 3 of the Municipal Court act provides that in all cases of the first class, and in all cases of the second class, the issues shall be made up by the same forms of pleadings, as near as may be, in use in similar cases in the circuit court. Section 20 provides that the judges shall have power to adopt, in lieu of the provisions contained therein prescribing the practice, such rules regulating the practice in said court as they may deem necessary or expedient for the proper administration of justice therein, provided, however, that no such rule or rules shall be inconsistent with those expressly provided for by the act. Section 28 contains an express provision in the seventh paragraph that the plaintiff shall file his declaration within three days after the commencement of the suit, in default whereof the suit shall be dismissed unless the court, by an order entered in said suit, shall extend the time for filing such declaration. The ninth paragraph of the same section provides that the judges may, by rules adopted, provide that the practice in cases of the first class shall be the same as in the act provided for cases of the fourth class, and in

cases of the latter class a declaration is not required. It must be confessed that there is a curious combination of conflicting provisions, but considering them together we think that the General Assembly intended to permit the judges to make a rule abolishing pleadings in cases of the first class, although a declaration is expressly provided for in the act, and section 20 prohibits the adoption of any rule inconsistent with what is so provided. It is argued, however, that pleadings are not included in the term "practice," which is true, in a strict sense. The reply to this argument is, that pleadings are included in the term "practice" because there are sections of what is termed "the Practice act" which relate to the subject of pleadings. The title of the act referred to is, "An act in relation to practice and procedure in courts of record," and procedure includes pleadings, so that no inference can be drawn from that act. It is well known that the scheme for a municipal court designed mainly to take the place of justices of the peace and police magistrates, contemplated a court, to a great extent, of the same character as the courts supplanted, and we think that the term "practice," as used in section 34 of article 4 of the constitution, was intended, and generally understood, as including pleadings, and therefore the court did not err in denying the motion.

The motion to dismiss for want of a declaration was followed by a number of motions for the purpose of settling issues. The defendant first moved the court to strike from the files the statement of claim as insufficient to constitute a cause of action. That motion being denied the defendant then filed a motion to require a more specific statement of claim, which was also denied. The defendant then filed a motion to require plaintiff to file copies of the policies sued on, as required by section 32 of the Practice act, and the court denied that motion. Exceptions were taken to each of these rulings. An affidavit of merits and an amended affidavit were filed and a motion was made to strike them

from the files, but after the first bill of exceptions was settled and filed the plaintiff asked leave to withdraw that motion and to amend the statement of claim. The motion was allowed and the defendant ordered to file an affidavit of merits thereto within five days. The plaintiff filed an amended statement of claim on April 10, 1911. On April 19, 1911, the plaintiff, by leave of court, filed an amended statement of claim to her amended statement of claim. The affidavit of merits of the defendant was stricken from the files and leave given to file an amended affidavit, which was filed. The court struck from the files the affidavit of merits as finally amended and entered an order of default and proceeded to assess the damages. The plaintiff then offered in evidence the policies and the testimony of a witness who computed the amount of interest due, and this was all the evidence.

There was no assignment of error in the Appellate Court on the ruling denying the motion to require copies of the policies to be filed, and therefore that ruling is not the subject of consideration. The statement of claim alleged that the Inter-State Assurance Company issued the policies; that the defendant re-insured the policyholders; that the Inter-State Assurance Company was a corporation organized under and by virtue of the laws of the State of Indiana and the defendant was a corporation organized under and by virtue of the laws of this State; that the re-insurance contract was in writing, executed and delivered in the State of Indiana in pursuance of and in accordance with the terms, provisions and conditions of the laws of the State of Indiana applicable thereto, and that the contract was submitted to and approved by a two-thirds vote of the policyholders called and held in accordance with the statutes of Indiana, but it contained no averment what the statutes of Indiana were or in what way they provided for re-insurance or affected the terms of the re-insurance contract. The affidavit of merits alleged fraud on the part of

Louis N. Weil in procuring the policy from the Inter-State
Assurance Company and ignorance of the fraud by the de-
fendant until after the contract of re-insurance was made;
that the defendant by its contract re-insured the outstand-
ing risks of the Inter-State Assurance Company then in
force and effect upon the then living policyholders of the
Inter-State Assurance Company who should assent to and
accept such re-insurance by the defendant thereunder; that
Louis N. Weil was notified of a meeting of the policyhold-
ers called to approve the re-insurance contract and was no-
tified of the re-insurance and the execution and approval of
the contract more than eight months prior to his death, and
that he gave defendant no notice of his election or inten-
tion to accept the re-insurance, nor did he do any act or
thing evidencing his acceptance or assent to the re-insurance
contract.

Annexed to the statement of claim as finally amended
there was a copy of the re-insurance contract, which con-
tains no provision showing that it was applicable only to
the living policyholders who should expressly assent to or
accept the re-insurance, and that averment of the affidavit
of merits finds no support in the written contract.   The
statement of claim alleged that the contract was executed
and delivered in the State of Indiana in pursuance of and
in accordance with the terms, provisions and conditions of
the laws of the State of Indiana applicable thereto, and it
is said that there was a statute of that State which obviated
the necessity of any acceptance of the contract by the in-
sured.   Counsel call attention to paragraph 2 of section 23
of the Municipal Court act, which provides that the court
shall take judicial notice of all laws of a public nature en-
acted by any State or territory in the United States, and
they say that the court, in performing the function of
knowing what the statutes of Indiana were, knew that there
was a statute, which they have copied in their brief, relat-
ing to re-insurance, and providing that every policyholder

is transferred to the re-insuring corporation unless he shall file with the secretary of the insuring corporation, within ten days after the meeting of the policyholders, a written notice of his preference to be transferred to some other corporation. In addition to that provision of the Municipal Court act it is said we should infer that the statutes of Indiana were in evidence before the court for the purpose of sustaining the judgment; but, of course, the court did not hear evidence on the motion to strike the statement of claim from the files because it did not state a good cause of action against the defendant, and the bill of exceptions recites that it contains all of the evidence on the trial, so that it is clear that the statutes were never before the court. There was nothing in the statement of claim indicating in any manner what the statutes of Indiana were, and there is nothing in the record to indicate that the court knew or found that they contained any provision differing in any respect from the rules of the common law. The affidavit of merits did not allege any matter of defense arising out of such statutes, and whether there were any, or what they were, is not involved in the decision of the case, which must depend upon the legal effect of the contract.

A contract which is strictly one of re-insurance is merely one of indemnity of the first insurer against the risk which it has already assumed, and it creates no privity of contract between the re-insurer and the person insured. (*Vial* v. *Norwich Fire Ins. Society,* 257 Ill. 355.) Unless a contract of re-insurance either expressly stipulates that the original insured can bring suit against the re-insurer or anything indicating such an intention, there is no privity of contract existing between the insured and the re-insurer. (Richards on Insurance Laws, 445.) The contract in this case was more than one of re-insurance, since it contained the following agreement: "The Federal accepts said transfer to it of said policies and securities, and hereby re-insures, as of the time when this contract goes into effect, all the

then living policyholders of the said Inter-State whose poli-
cies are then in force in said Inter-State, and said Federal
assumes and guarantees the said policies of said living pol-
icyholders in accordance with the terms and conditions of
said policies, respectively, the future premiums on said poli-
cies to be paid to the Federal." By assuming and guaran-
teeing the policies the defendant undertook to discharge the
obligations of the Inter-State to its policyholders, and un-
der such an agreement the insured may sue the re-insurer.
(*Johannes* v. *Phenix Ins. Co.* 66 Wis. 50; *Glenn* v. *Hope
Mutual Life Ins. Co.* 56 N. Y. 379; *Shoaf* v. *Palatine Ins.
Co.* 127 N. C. 308; *Whitney* v. *American Ins. Co.* 127 Cal.
464; *Ruohs* v. *Traders Fire Ins. Co.* 111 Tenn. 405.) The
Inter-State Insurance Company could not transfer its liabil-
ity to the defendant and compel Weil to accept it as an in-
surer. (*Davenport Fire Ins. Co.* v. *Moore,* 50 Iowa, 619;
*Price* v. *St. Louis Mutual Life Ins. Co.* 3 Mo. App. 262.)
But Weil had his election to repudiate the transfer if he
saw fit or to accept the obligation imposed upon the de-
fendant by its contract. (4 Cooley's Briefs on Insurance,
3942.) The statement of claim alleged as to each policy
that at the time of the death of Weil no premiums thereto-
fore falling and becoming due and payable remained un-
paid; that Weil, during his lifetime, kept, performed and
complied with all the terms, provisions and conditions of
.the policy; that the plaintiff had at all times since his death
kept and performed, observed and complied with all the
terms and provisions of the policy on her part, and that
she had submitted due proofs of the death of Weil to the
defendant, in accordance with the policy. Nothing further
was required in the way of acceptance to enable the plain-
tiff to maintain the action against the defendant.

The insurance policies contained a clause that they
should be incontestable after one year from the date of
issue provided the premiums were duly paid, and the aver-
ment of the affidavit of merits that Weil procured them

264 — 28

by fraud could not be made a defense. The purpose of the provision was to fix a limited time in which the insurer could ascertain the truth of representations, and the period being sufficient for that purpose with the exercise of proper diligence, it was valid. *Flanigan* v. *Federal Life Ins. Co.* 231 Ill. 399; *Kansas Mutual Life Ins. Co.* v. *Whitehead,* 123 Ky. 21; 13 Ann. Cas. 301; *Supreme Court of Honor* v. *Updegraff,* 68 Kan. 474; 1 Ann. Cas. 309.

When the defendant entered its appearance a demand was made for a jury, but when the court proceeded to assess the damages there was no demand for a jury trial. If there was any right to a trial by jury on the assessment of damages it was waived by a failure to demand it.

The judgment is affirmed.        *Judgment affirmed.*