[S. F. No. 840.    In Bank.—January 22, 1900.]

## A. L. WHITNEY, Respondent, v. AMERICAN INSURANCE COMPANY, and NORTHWESTERN NATIONAL INSURANCE COMPANY, Appellants.

FIRE INSURANCE—POLICY TO MORTGAGEE—NOTICE OF CHANGE OF OWNERSHIP—RECORD OF UNDELIVERED DEED—NONACCEPTANCE.—Under a policy of fire insurance issued to a mortgagee, a condition that the mortgagee shall give notice of any change of ownership in the mortgaged property, is not broken by a failure to give notice of a recorded deed which was never in fact delivered to the grantee, and which he refused to accept, and which did not therefore result in a change of ownership.

ID.—DELIVERY OF DEED—QUESTION OF FACT—INTENTION OF BOTH PARTIES ESSENTIAL.—The delivery of a deed is a question of fact, depending more upon the intention of the parties than upon the mode of fulfilling the intention. The intention both of the grantor and of the grantee that the deed shall operate as a delivered instrument is essential to a delivery thereof.

ID.—PROPOSITION FOR EXCHANGE—DEED TO THIRD PARTY—DELIVERY TO INTERESTED AGENT—REPUDIATION BY GRANTEE.—Under a proposition for the exchange of property, and for a deed to a third party in settlement of accounts against the proposer of the exchange, a delivery of the deed to the latter and his record thereof as agent of the grantee, while acting in his own interest, and without the knowledge or consent of the grantee or his subsequent approval, cannot operate as delivery to the grantee, and upon his repudiation of the transaction and refusal to accept the deed, no change of ownership is effected thereby.

ID.—ASSUMPTION OF FIRE POLICIES BY NEW COMPANY—ASSENT OF POLICYHOLDER—ACTION — PRIVITY OF CONTRACT.—The assumption of all the fire insurance policies of an insurance company by a new company is much broader than a mere naked contract of reinsurance under the code; and a holder of a policy issued by the former company sufficiently manifests his consent to the contract by which the payment of the policy was assumed by bringing an action against the new company upon the policy. The law creates the privity necessary for the maintenance of the action.

ID.—JOINT LIABILITY OF COMPANIES.—The old company and the new company assuming its policies are jointly liable upon the policy, and may be sued thereupon as codefendants.

ID.—REVOCATION OF AGENCIES OF OLD COMPANY—PROOF OF LOSS TO AGENTS OF NEW COMPANY.—Where all of the agencies of the old company were revoked and transferred to agents of the new

company which assumed its policies, proof of loss directed to the company which issued the policy, and presented to the authorized agents of the new company within proper time after the fire, is sufficient as against both companies.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

James Alva Watt, for Appellants.

The acceptance and record of the deed by Beach, who was the attorney in fact of the grantee, passed title to the grantee. By the failure of the mortgagee to comply with the condition of the policy as to notice of change, there being no waiver of the condition, there can be no recovery upon the policy. (Civ. Code. sec. 2611; Wood on Fire Insurance, sec. 144; Ostrander on Fire Insurance, sec. 123; *Wenzel v. Commercial Ins. Co.*, 67 Cal. 438; *California State Bank v. Hamburg etc. Ins. Co.*, 71 Cal. 11; *Shuggart v. Lycoming Ins. Co.*, 55 Cal. 408, 414; *Ormsby v. Phoenix Ins. Co.*, 5 S. Dak. 72; *Kabrich v. State Ins. Co.*, 48 Mo. App. 393; *Byers v. Farmers' Ins. Co.*, 35 Ohio St. 606; 35 Am. Rep. 623; *Blumer v. Phoenix Ins. Co.*, 45 Wis. 622; *Galantshik v. Globe Fire Ins. Co.*, 10 Misc. Rep. 369; 31 N. Y. Supp. 32; *Hand v. Williamsburgh Fire Ins. Co.*, 57 N. Y. 41; *Genessee Falls etc. Assn. v. United States Fire Ins. Co.*, 16 N. Y. App. Div. 587; 44 N. Y. Supp. 979; *Cole v. Germania Fire Ins. Co.*, 99 N. Y. 37.) The contract between the American Insurance Company and the Northwestern National Insurance Company was, as between them, a contract for reinsurance, in which parties insured under American insurance policies had no interest. (Civ. Code, secs. 2646-49; *Commercial Union Assur. Co. v. American Cent. Ins. Co.*, 68 Cal. 430.)

Mullany, Grant & Cushing, for Respondent.

There was no change of ownership. Beach, as an agent, could not act under power of attorney for his own benefit, in taking the deed and recording it, without the consent of Taylor. (*Kingston v. Kincaid*, 1 Wash. C. C. 448; *Williams v. Johnston*,

92 N. C. 532; 53 Am. Rep. 431.) Under the circumstances of this case, both of the insurance companies were jointly liable to the plaintiff upon the policy sued upon. (*Hall v. Nashville R. R. Co.*, 13 Wall. 367; *Plimpton v. Farmers' etc. Ins. Co.*, 43 Vt. 497; 5 Am. Rep. 297; *The Monticello v. Mollison*, 17 How. 152.) Everything was done that could be done in proving the loss.

VAN DYKE, J.—This action is brought jointly against the two companies defendants upon a fire insurance policy issued by defendant, the American Insurance Company, September 6, 1893. The plaintiff is mortgagee of the land upon which the building insured was situated. Judgment went in his favor in the court below, and the appeal is taken from the judgment and an order denying a new trial.

At the date of the issuance of the policy the legal title to the land was in James E. Gordon, who had purchased it from J. F. Sullivan, who, prior to the sale to Gordon, had executed a mortgage to the plaintiff to secure the sum of over eleven hundred dollars. The amount of the policy was a thousand dollars, and the loss, if any should occur, was made payable to the mortgagee. The mortgage clause accompanying the policy provided: "That this insurance, as to the interest of the mortgagee or trustee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, or by the occupation of the premises for purposes more hazardous than are permitted by the terms of this policy; . . . . provided, also, that the mortgagee or trustee shall notify this company of any change of ownership or increase of hazard which shall come to his or their knowledge, and shall have permission for such change of ownership or increase of hazard duly indorsed on this policy."

In December, 1893, Gordon reconveyed the premises back to Sullivan and assigned the policy to him, and this transfer and assignment were approved by the company.

The premises insured were located in the city of Los Angeles, and the policy of insurance was issued by J. K. Mulkey, the agent of the American Insurance Company, residing there at that time. On May 9, 1894, one W. W. Beach, a tenant occupying the premises insured, had some negotiations with Sulli-

van, the owner, in San Francisco, looking to an exchange of some of his property for the insured property at Los Angeles; and, as a result of such negotiations, Beach requested Sullivan to make a deed of the insured premises to one C. S. Taylor. It seems that Beach expected that Taylor would accept the deed in satisfaction of certain claims which Taylor held against him, Beach. The deed, after being executed by Sullivan and his wife, was handed to Beach, who had it recorded in Los Angeles. Taylor, however, repudiated the transaction and refused to accept the deed.

The building insured was destroyed by fire on May 19th, ten days after the date of the deed from Sullivan and wife to Taylor, and a short time thereafter Beach, who held a general power of attorney from Taylor, as such attorney executed a deed back to Sullivan.

It is claimed on the part of the appellants, and this is really the main ground of defense, that the execution of the deed by Sullivan, as stated, amounted to a change of ownership of the property, and that the defendants did not receive the notice thereof as required by the conditions of the mortgage clause. But the transaction in question did not amount to a change of ownership of the property, and the finding of the court accordingly is abundantly supported by the testimony. The paper executed by Sullivan and wife never took effect as a deed to Taylor. "A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor." (Civ. Code, sec. 1054.) In *Hastings v. Vaughn*, 5 Cal. 316, it was said: "Delivery is a question of fact depending more upon intention than upon the mode of fulfilling the intention." In *Hibbard v. Smith*, 67 Cal. 547, 56 Am. Rep. 726, it was said: "The act, solemn and authentic, done in writing in form apt for the conveyance of land with signature and seal, does not take effect as a deed until delivery with intent that it shall operate. The intent with which it is delivered is important. This restricts or enlarges the effect of the instrument." Even where the grantee is in possession of the deed, though that may raise a presumption of delivery, still "it may be shown by parol evidence that a deed in possession of the grantee was not delivered." (Devlin on Deeds, secs. 294, 295.) The intention as

well on the part of the grantee as the grantor is the controlling element in the question of delivery. (*Black v. Sharkey*, 104 Cal. 279.) Beach testifies that he proposed to Taylor to secure the building by a trade with Sullivan, if possible, and turn it over to Taylor to call certain accounts square, and that he agreed to it; and after getting the property he says he had it deeded to Taylor, but that it burned down before he heard from him, and that he declined to take it. "Q. Did you deliver the deed to him? A. I did not. Q. Was there ever any delivery of the deed to him? A. I simply sent it to the recorder, and it was recorded at my request. He refused to receive it, and I turned it over to Dr. Sullivan when I got the property back." He further testifies that the object in reconveying it to Sullivan was to take the record title out of Mr. Taylor. The consideration for the deed from Sullivan was Beach's entirely. Taylor paid nothing for the property. The transaction was entirely in the interest of Beach, and in handing the paper over to Beach under such circumstances there was no delivery of the grant to Taylor. An agent or trustee cannot transact business entirely for his own interest and bind the principal, or *cestui que trust*, without his knowledge or consent at the time, or subsequent acquiescence and ratification. There being no change of ownership resulting from the transaction referred to, it follows that there was no necessity for any notice.

In March, 1894, a written contract was entered into between the American and Northwestern, by which, in consideration of certain money and property given by the former to the latter and payment by the American to the Northwestern of a certain *pro rata* of unearned premiums, the Northwestern assumed all the liabilities of the American upon all its policies, among which it is admitted the policy in question in this action was included. In the contract between the companies the Northwestern covenanted that it "will make as prompt adjustments and payments of loss, if any, under any and all of its policies of the said American Insurance Company hereby reinsured, as it would under its own policies if issued direct to said assured. Thereafter all the agencies of the American Company in California were revoked, and the Northwestern took the entire control and management of all matters arising out of said policies and the adjustment of

losses in cases of fire, and the American Company practically disappeared from business. Some years prior to this agreement the American Company had filed in the office of the insurance commissioner of this state a designation of one Ed. E. Potter, as its agent; but a few days after the fire Sullivan went to see Potter, who informed him that he was no longer the agent of the American, except, perhaps, for the purpose of settling with the Northwestern Company. The proofs of loss were made within five days after the fire, and were directed formally to the American Company, but were sent to George W. Turner at San Francisco, who was the general agent of the Northwestern. The day after the fire, however, the plaintiff, as the mortgagee, called on Mulkey as the agent of the American Company, and informed him of the fire. Thereupon, for the first time, Mulkey stated that he was no longer agent of the said company, that said company's policies on this coast had been assumed by the Northwestern, and that Betts & Silent of Los Angeles were the agents. Soon afterward, Mr. T. A. Nerncy·called on the plaintiff, and informed him that he was the agent and adjuster of the Northwestern, and took him to the office of Betts & Silent, and there prepared and caused proof of loss to be made in due form, which proof of loss he sent to Turner, as already stated. Turner testifies that, after the contract between the companies, "I had charge of the business covered by that contract, including the risk of policy sued for here and now before this court. As to this policy sued on I began to handle it a week or ten days after the fire. Just as soon as I received the proof of loss from Mr. Nerney I went to work on the subject and called on Mr. Sullivan." He further testified that Mr. Potter had called in all the agencies of the American Insurance Company, and that the Northwestern, "through its agents and under my general agency, had been attending to all the affairs under the policies of insurance issued by the American Insurance Company's agents under this agreement since about April 1, 1894, and it was under that agreement and in pursuance of the duties which were assumed under that agreement that I went to see Dr. Sullivan in regard to this policy; and Mr. Nerney attended to the taking of the proofs of loss on behalf of the American Insurance Company at Los Angeles from A. L. Whitney, the

plaintiff herein. I, as agent of the Northwestern National Insurance Company, had authority to receive the proofs of loss under this policy of the American Insurance Company." After Turner had learned from Sullivan that the latter had made a deed to Taylor, and supposing therefrom that there had been a change of ownership of the property, he returned the proofs of loss on the presumption, presumably, that his company was relieved from liability for want of notice of such change of ownership.

It is argued by appellants' counsel that the contract between the companies referred to, and their subsequent action in carrying it out, amounted to nothing more than a naked contract of reinsurance under the code, which reads as follows: "A contract of reinsurance is one by which an insurer procures a third person to insure him against loss or liability by reason of such original insurance." (Civ. Code, sec. 2646.) The facts in this case show the contract in question to be much broader than a mere technical reinsurance. In *Arnold v. Lyman*, 17 Mass. 400, 9 Am. Dec. 154, it is said: "The promise being not to Hutchins expressly, but general in its form, the assent of the creditors made them parties to the promise; and this assent is sufficiently proved, as respects the plaintiffs, by their bringing an action upon the contract." (See, also, *Morgan v. Overman etc. Co.*, 37 Cal. 534; *Flint v. Cadenasso*, 64 Cal. 83; *Lockwood v. Canfield*, 20 Cal. 126.)

The finding of the court that under the said agreement between the companies defendants the Northwestern National Insurance Company assumed and undertook the care, control, and management of the business and risks of the said American Insurance Company in this state, including the policy of insurance sued on herein, is fully supported by the evidence. The holders of policies issued by the American Company in this state could avail themselves of said promise and undertaking made for their benefit by the Northwestern Company, and, as said in the cases cited, the bringing of suit is sufficient evidence of assent on the part of the plaintiff to said agreement and undertaking. The law creates the privity necessary for the maintenance of the action. The Northwestern was jointly liable with the American on said policy, and the proof of loss was sufficient.

The other objections to the findings, not being supported by the evidence, are unimportant or immaterial.

The judgment and order appealed from are affirmed.

McFarland, J., Garoutte, J., and Harrison, J., concurred.

Temple, J., dissented.