JOSEPH VIAL, Plaintiff in Error, *vs.* THE NORWICH UNION FIRE INSURANCE SOCIETY, Defendant in Error.

*Opinion filed February 20, 1913.*

1. INSURANCE—*re-insurance defined.* Re-insurance is the contract which one insurer makes with another to indemnify the first insurer against a risk it has already assumed, and where the contract is for re-insurance, only, it operates solely between the insurer and the re-insurer and creates no privity of contract whatever between the re-insurer and the persons insured.

2. SAME—*a policyholder cannot sue the re-insurer if the latter's contract is strictly for re-insurance.* A policyholder in a company which has re-insured its risks with another company cannot maintain an action against the re-insuring company unless the contract between the two companies goes farther than mere re-insurance and the insuring company has thereby assumed the liabilities of the re-insured company and has agreed to pay them.

3. SAME—*contract construed as being strictly one of re-insurance.* A contract whereby one insurance company agrees with another company "to re-insure from 12 o'clock M., standard time, on above date, at the place where the property insured is located, all unexpired fire and lightning risks located in the United States, for the amounts not heretofore re-insured, now covered by policies and contracts issued by the Indemnity, according to their terms and conditions and to pay all losses thereon occurring after the last mentioned hour, and to pay all adjusting and other expenses arising from such risks and all return premiums upon the cancellation of policies enumerated in the schedules," is strictly a contract of re-insurance.

WRIT OF ERROR to the Branch "C" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

LYMAN, LYMAN & O'CONNOR, for plaintiff in error.

BARGER & HICKS, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error filed a bill in chancery in the circuit court of Cook county to reform a fire insurance policy on the ground of mutual mistake and to enforce the payment of a loss under said policy as reformed. A decree was entered by the circuit court in accordance with the prayer of the bill, and the defendant prosecuted an appeal to the Appellate Court for the First District. That court reversed the decree of the circuit court and remanded the cause, with directions to dismiss the bill for want of equity, and the record has been brought to this court for review by writ of *certiorari.*

Plaintiff in error resided and was engaged in business in LaGrange, Illinois, and owned a farm near that place, upon which there were several buildings, including a large residence for the tenant and two smaller residence buildings, which were not at the time of the loss, nor had been for some time previous, used for residence purposes but were used for storage and other purposes. The policy sought to be reformed was issued on October 30, 1905, by the Indemnity Fire Insurance Company of New York, covering a term of three years, for the amount of $1700 on a frame dwelling house on the farm, described in the policy. In August, 1908, a number of buildings on the farm were destroyed by fire but the frame residence was not destroyed. When proofs of loss were made payment was refused on

the ground that the buildings destroyed were not covered by the policy. Plaintiff in error claimed his instructions to and agreement with the parties who secured the policy for him were that it was to cover all the buildings on the farm. There was a mortgage of $2200 on the farm, and the old policy, which expired at the time the policy sought to be reformed was issued, was in the hands of the party who held the mortgage, as collateral to said mortgage. When the policy sought to be reformed was issued plaintiff in error claims it was delivered by the agents who procured it to the same party, and that he never saw it until after the loss occurred. The bill alleged that the failure to include all the buildings on the farm in the policy was a mutual mistake, and the master in chancery to whom the cause was referred to take the testimony and report his conclusions found that the proofs sustained the allegations of the bill and recommended a decree as prayed, and a decree was accordingly so entered.

In the view we take of this case it will be unnecessary to pass upon the merits of the controversy as to whether there was a mutual mistake in the description of the property covered by the policy.

Under date of May 1, 1907, defendant in error, the Norwich Union Fire Insurance Society of Norwich, England, entered into a re-insurance contract with the Indemnity Company, by which contract, in consideration of an amount agreed upon, defendant in error re-insured to the Indemnity Company its risks covered by outstanding policies, and the Indemnity Company thereafter ceased doing business in the State of Illinois. The Norwich Union Company was made the sole defendant to the bill.

The first question presented for our determination then is whether a policyholder in the Indemnity Company can maintain an action, by virtue of the re-insurance agreement, against defendant in error. The decision of this question involves a construction of the re-insurance agree-

ment and a determination whether it is strictly a re-insurance contract.

Re-insurance is defined to be a contract that one insurer makes with another to protect the first insurer from a risk he has already assumed. It is not denied such contracts are lawful and valid. "The ordinary contract of re-insurance operates solely between the insurer and the re-insurer, and creates no privity whatever between the re-insurer and the person originally insured. The contract of insurance and that of re-insurance remain totally distinct and unconnected, and the re-insurer is in no respect liable, either as surety or otherwise, to the person originally insured." (24 Am. & Eng. Ency. of Law,—2d ed.—p. 249.) In a note to this text will be found cited numerous decisions of courts of last resort sustaining it, and we do not understand it to be disputed by plaintiff in error that this is the rule where the re-insurance contract is strictly one of re-insurance. In *Barnes* v. *Hekla Fire Ins. Co.* 56 Minn. 38, (45 Am. St. Rep. 438,) the court said: "Re-insurance is a mere contract of indemnity, in which an insurer re-insures risks in another company. In such a contract the policyholders have no concern, are not the parties for whose benefit the contract of re-insurance is made, and they can not, therefore, sue thereon."

A number of cases are to be found where it has been held that a policyholder may maintain an action against the re-insuring company, but in all of such cases the contract between the re-insuring company and the re-insured was more than a mere contract of re-insurance and the re-insurer assumed the liabilities of the re-insured and agreed to pay them.

In *Johannes* v. *Phenix Ins. Co.* 66 Wis. 50, (57 Am. Rep. 249,) the right of a policyholder to maintain an action against the re-insuring company was sustained. The contract between the re-insuring company and the re-insured, however, was not a strictly re-insurance contract. The

court said: "But in the case before us the contract between the defendant companies was, as it seems to us, something more than a mere re-insurance. By that contract the Standard Company sold and turned over to the Phenix its entire business and the good will of that business in the United States, together with a large amount of bonds and other property, in consideration of which the Phenix thereby 're-insured all the risks' of the Standard Company 'upon property situated in the United States, * * * and agreed that all losses arising under the policies of the said defendant Standard Fire Office, Limited, upon property situated in the United States of America, should after that time [January 1, 1884,] be borne by the said Phenix Insurance Company and should be paid, satisfied and discharged by it, * * * and agreed that the loss of this plaintiff arising thereunder should be borne, paid, satisfied and discharged by said Phenix Insurance Company, which thereupon became owner of the good will, original documents and books of its co-defendants herein [the Standard Company] relating to the risks aforesaid, and assumed control of the same and of the business pertaining to said risks, policies and losses.' Such are the alleged terms of the contract we are required to construe. The losses thus arising under the policies could only 'be borne, paid, satisfied and discharged' by the Phenix in a direct transaction with the policyholders. Even a payment by it of the amount of the loss to the Standard Company would not satisfy or discharge the plaintiff's claim for such loss on his policy. That could only be done on payment to the plaintiff. It seems to us that by the terms of the contract, as alleged, the Phenix, in effect, thereby assumed the risk covered by each policy and agreed to pay any loss arising under each policy."

In *Glenn* v. *Hope Mutual Life Ins. Co.* 56 N. Y. 379, the court stated the re-insurance contract in the following words: "By the agreement mentioned, the defendant agreed to re-insure the Craftsmen's Life Assurance Com-

pany on all risks for which its policies were outstanding at that date, and also to assume all such policies, and to pay to the holders thereof all such sums as the said company might, by force of such policies, become liable to pay." It was held under this agreement a policyholder could sue the re-insuring company.

Another case where the right of a policyholder to maintain an action against the re-insuring company is considered is *Shoaf* v. *Palatine Ins. Co.* 127 N. C. 308; 80 Am. St. Rep. 804. But the re-insurance contract was more than merely a contract to indemnify the re-insured. The re-insuring company agreed to assume all liabilities under any outstanding policies of the re-insured then existing and on any policy that might be written thereafter by the re-insured for the benefit of and under the direction of the re-insuring company, and the re-insuring company assumed all expenses and taxes connected therewith, and all of said risks and policies were re-insured by the Palatine Insurance Company, the re-insurer. The court held that this agreement inured to the benefit of the policyholders.

In *Whitney* v. *American Ins. Co.* 127 Cal. 464, the right of a policyholder to maintain an action against the re-insuring company was sustained. In that case the Northwestern Company re-insured the American Company, in which the plaintiff had a policy, and the suit was brought against both companies. By the re-insurance contract the Northwestern Company assumed all liabilities of the re-insured company upon all of its policies and agreed to make prompt adjustments and pay any loss occurring under the American Company's policies. The court held the law created the privity necessary for the maintenance of the action against the re-insuring company.

In *Ruohs* v. *Traders Fire Ins. Co.* 111 Tenn. 405, (102 Am. St. Rep. 790,) the right of a policyholder to maintain an action against the re-insuring company was sustained, but it appears from the opinion of the court the

contract between the original company and the re-insuring company was more than a mere contract of re-insurance. The court said: "This is not an ordinary case of technical insurance between two insurance companies. The facts found by the court of chancery appeals make it a contract for the use and benefit of complainants and other policyholders of the Traders for a valuable consideration, under circumstances entitling them to maintain this suit. The court of chancery appeals finds that the agreement and understanding was that the North British should assume all outstanding risks of the Traders and place itself in the same position toward said policyholders as if said policies had been its own; that the Traders went out of business, and all of its assets, amounting to about $85,000, went into the hands of the North British Company and the latter assumed all the fire risks of the former, and the North British dealt with the Traders policies the same as its own, canceling some, paying returned premiums, granting permits, adjusting and paying losses, and gave out statements, by letters and agents, that it had assumed all of said policies and that nothing was necessary to be done by the policyholders to make said contract binding on the North British Company."

The foregoing are the principal cases relied upon by plaintiff in error to sustain his action in this case against the re-insuring company. By the contract of re-insurance here involved defendant in error did not agree to assume any of the obligations of the Indemnity Company to its policyholders. The contract is one strictly of re-insurance for the sole benefit of the Indemnity Company. The material part of the contract is as follows: "Witnesseth, that the Norwich Union agrees to re-insure from 12 o'clock M., standard time, on above date, at the place where the property insured is located, all unexpired fire and lightning risks located in the United States, for the amounts not heretofore re-insured, now covered by policies and contracts is-

sued by the Indemnity, according to their terms and conditions, and to pay all losses thereon occurring after the last mentioned hour, and to pay all adjusting and other expenses arising from such risks and all return premiums upon the cancellation of policies enumerated in the schedules."

We can give this contract no other interpretation than an agreement of defendant in error to re-insure all unexpired fire and lightning risks covered by policies issued by the Indemnity Company and to pay to said Indemnity Company all losses thereafter occurring upon such risks of the Indemnity Company. In consideration of this re-insurance contract the Indemnity Company agreed to pay defendant in error "a sum equal to the net amount of the *pro rata* unearned premium on all the risks thus re-insured, less a deduction of fifteen per cent (15%) from such *pro rata* premium, which is in lieu of any and all charges and allowances, including taxes, assessments of all kinds, and other charges of a similar nature for which the Indemnity is liable." There is no assumption of any liability of the Indemnity Company to the policyholders, nor any agreement on the part of defendant in error to pay any loss sustained by the policyholders. It is strictly a contract to indemnify the Indemnity Company against any losses it might sustain, but defendant in error assumed none of the liabilities of that company to its policyholders. The Indemnity Company continued liable, as before, to settle with its policyholders, and there is nothing in the contract to indicate that it was made for the benefit of the Indemnity Company's policyholders. It created no privity whatever between the Indemnity Company's policyholders and defendant in error, and therefore no right exists in plaintiff in error to maintain an action against defendant in error.

In our opinion the judgment of the Appellate Court is right, and it is affirmed.                    *Judgment affirmed.*