164 So. 70

**UNITED STATES FIRE INS. CO. et al. v. SMITH.**

**7 Div. 340.**

Supreme Court of Alabama.

Oct. 17, 1935.

Rehearing Denied Nov. 7, 1935.

See, also, United States Fire Ins. Co. v. Hecht, post, p. 256, 164 So. 65.

172

Coleman, Spain, Stewart & Davies and Frank M. Young, all of Birmingham, and O. R. Hood, of Gadsden, for appellants.

Inzer, Davis & Martin, of Gadsden, for appellee.

**KNIGHT, Justice.**

The liability, if any, against the defendant United States Fire Insurance Company rests upon a policy of fire insurance issued by it, covering a certain house owned by the plaintiff, in the city of Gadsden; and the other defendant, the National Liberty Insurance Company, is sought to be held by virtue of a contract of reinsurance, whereby the latter company reinsured the risk, and, in case of loss, agreed to take charge of and adjust and pay the same without expense to the United States Fire Insurance Company.

The contract of reinsurance is attached to, and made a part of each of the counts of the complaint.

It appears from the complaint, as amended, that the insured's home was destroyed by fire on November 10, 1932, and at that time the policy of insurance sued on was in force, as well as the said contract of reinsurance.

The defendants, each appearing specially for the purpose, filed separate pleas in abatement of the action. By their pleas the defendants sought to abate the action upon the ground that the policy contract provided that within sixty days after the fire, if one should occur, the insured should furnish to the insurer proof of loss, and that the amount for which the insurer might be liable would not become due and payable until sixty days "after due notice, ascertainment, estimate and satisfactory proof of loss had been received by the company"; and in each of the pleas it was averred "that the plaintiff did not before the commencement of this suit file a proof of loss as required by the foregoing provisions of the policy contract."

There was a demurrer by the plaintiff to each of these pleas, but the court overruled the same.

With his demurrer overruled, the plaintiff filed sworn special replications to the pleas in abatement, along with a general replication. To these special replications the defendants filed their separate demurrer, separately and severally, to each replication. The court overruled the demurrers to replications 2, 3, 4, 5, and 6, but sustained the same to replications numbered 7 and 8. Replications 2, 3, 4, and amended replications 5 and 6 appear in the report of the case.

The defendants each filed separate rejoinders to plaintiff's replications 2, 3, 4, 5, and 6. Rejoinder No. 1 was a general denial of the allegations of the replications, and rejoinder No. 2 set up "a non-waiver agreement" executed by the plaintiff, and alleged that the investigation of the loss alleged to have been suffered by the plaintiff was entered upon and made under the reservations set up in the nonwaiver agreement, a copy of which is made a part of rejoinder No. 2.

The first insistence made by the appellants against the sufficiency of replica-

tions 2, 3, and 4 is that the replications "separately use the designation 'defendant,'" and that none of the replications contain an allegation that the "so-called adjuster was investigating the loss for the *defendants*." That, inasmuch as there are two defendants in the case, it would appear that the adjuster was working for one defendant only, and not for both, and the replications fail to allege for which defendant "the so-called adjuster" was making the investigation.

There is no merit in the contention noted above. The defendants filed separate pleas, and the replications are assigned separately and severally to each of the pleas, and hence they refer to the defendant in the singular number.

■ It is next insisted by appellants that the plaintiff failed to allege *any facts* on which to predicate the alleged waiver, and that the "material averments on which a waiver or estoppel is' sought to be established are mere conclusions of the pleader." A careful reading of these replications will disclose that the supposed vice complained of does not exist.

It must be borne in mind that each of these replications aver that the denial of liability on the part of the defendants, under said policy, was made within sixty days after the occurrence of the fire, and at a time when the plaintiff was in no default whatsoever in presenting his proofs.

In our recent case of Rhode Island Ins. Co. v. Holley, 226 Ala. 320, 321, 146 So. 817, 819, we quoted with approval the following statement in 26 Corpus Juris pp. 406–408, § 522–k: "If insurer, within the time for presenting proofs of loss, denies liability or refuses to pay the loss, it thereby waives the necessity for proofs; and it is generally held that a denial of liability or a refusal to pay not predicated on the failure to furnish proofs is a waiver of any objection on that ground, irrespective of whether the denial precedes or follows the time within which proofs should have been furnished."

It would seem that the case of Ray v. Fidelity Phoenix Fire Ins. Co., 187 Ala. 91, 65 So. 536, is an authority directly in point sustaining the action of the trial court in overruling the demurrers of defendants to replications 2, 3, and 4.

■ We hold that the unqualified denial of liability, or the refusal to pay the loss by the insurer, if made within the time for presenting proofs of loss, is, in either event, a waiver of the necessity for furnishing proofs.

■ We also hold that an unqualified promise to pay the insurance made within the time allowed by the policy for presenting proofs of loss, and made by any one authorized to bind the company, is a waiver of the necessity of presenting proofs. 26 Corpus Juris, p. 406, § 521; Commercial Fire Ins. Co. v. Allen et al., 80 Ala. 571, 1 So. 202; Norwich & N. Y. Transp. Co. v. Western, etc., Ins. Co., 34 Conn. 561, Fed. Cas. No. 10,363.

■ It is also insisted that replication 3 as a plea of estoppel is defective upon the further ground that it does not allege any change in plaintiff's status as a result of the alleged denial of liability, "or that he has incurred any expense or inconvenience in connection therewith." We do not regard plaintiff's third replication as setting up an estoppel, but rather as stating a case of waiver. So regarded, it must be held sufficient upon the authority of Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909. We do not, therefore, think replication 3 was infected with the vice pointed out by defendants' demurrer on the last-stated point. We hold the replication sufficient against all grounds of demurrer assigned thereto. Authorities supra.

■ We are fully persuaded also that special replications 5 and 6, after amendment, presented a complete answer to defendants' pleas in abatement. Commercial Fire Ins. Co. v. Allen, supra.

After the court had overruled the demurrers of defendants to plaintiff's replications 2, 3, 4, and 5 and 6 as amended, the defendants filed separate rejoinders thereto. The first rejoinder was a general denial of the allegations of the replications, while the second rejoinder brought forward and set up as an answer to said replications a nonwaiver agreement, under which it is alleged the investigation of the loss was made. The plaintiff demurred to the several rejoinders, but the demurrer was overruled.

Thereupon, the cause proceeded to trial upon the issues presented by the defendants' pleas in abatement, the replications thereto, and the defendants' rejoinders to said replications.

Upon the conclusion of the evidence offered on the issues presented by the pleas in abatement, the replications thereto and the rejoinders of defendants, each of the defendants requested the general affirmative instruction in several forms, in their behalf, and each of which instructions was refused. The defendants also separately reserved exception to portions of the court's oral charge.

In order to determine whether there was error prejudicial to the defendants, or to either of them, in respect to charges refused to the defendants, as well as to the portions of the court's oral charge, we deem it first necessary to consider and determine the legal effect of the reinsurance contract, and to determine whether this contract was merely an ordinary reinsurance contract, affecting only the rights of the two contracting parties, or whether it went beyond the limits of an ordinary reinsurance contract, and was made directly for the benefit of reinsured policyholders, *or if the reinsurer assumed and agreed to perform the reinsured's contracts.*

The defendants on the trial of the issues under the plea in abatement read in evidence the policy of insurance issued by the United States Fire Insurance Company to the plaintiff, and the plaintiff, over the separate objection and exception of the defendants, read in evidence the reinsurance contract. This contract appears in the report of the case.

In 33 Corpus Juris 735, p. 57, the author makes the following statement as to the legal effect of ordinary contracts of reinsurance: "The ordinary contract of reinsurance operates solely between reinsured and the reinsurer, and creates no privity whatever between the reinsurer and the person originally insured. The contract of insurance and that of reinsurance remain totally distinct and unconnected, and the reinsurer is in no respect liable, either as surety or otherwise, to reinsured's policy holders; and accordingly, they have no right of action against the reinsurer on the contract of reinsurance, nor any right of action against the reinsurer to reform the policy. However, if the contract of reinsurance is made directly for the benefit of reinsured's policy holders, *or if the reinsurer assumes and agrees to perform reinsured's* contracts, the reinsurer becomes directly liable to the policy holder." (Italics supplied.)

Section 736, ib.: "In the absence of any statutory restrictions, it is competent for the reinsurer to make a reinsurance contract inure directly to the benefit of the person originally insured, and, in jurisdictions where a third person is allowed to maintain an action on a contract made for his benefit, the original insured may recover directly from the insurer. Accordingly, where, in reinsuring risks for which policies are outstanding, the reinsurer contracts with reinsured to assume the policies and to pay the holders thereof all such sums as reinsured may become liable to pay, the persons to whom these original policies are payable acquire a direct right of action against the reinsurer, and may sue in their own names and recover on the contract of reinsurance. * * * Indeed, it has been held that the original policy holders may thus sue, although the contract of reinsurance provides that they shall not be entitled to enforce the contract against the reinsurer."

In 14 R. C. L., § 618, p. 1452, the author makes the following statement with reference to reinsurance contracts: "While the position has been taken that an insured has such an interest in a contract of reinsurance that he may sue the reinsurer to recover a loss on property covered by his policy, though he is not a party to the reinsurance contract and such contract expressly provides that no such action can be maintained, the better rule, and the prevailing one, is that reinsurance is a mere contract of indemnity, in which an insurer reinsures risks in another company. In such a contract the policy holders have no concern, are not the parties for whose benefit the contract of insurance is made, and they cannot, therefore, sue thereon. It has been held, however, that where the insurer takes over the business and assets of the reinsured an insured may maintain an action against the reinsurer, and if a contract of reinsurance includes a promise or agreement to assume and pay the losses of policyholders, action may be brought by them, in case of loss, directly against the reinsurer, upon such promise or undertaking."

We find the following definition of a reinsurance contract in 33 Corpus Juris 715, p. 44: "It is a contract whereby one party, called the 'reinsurer,' in consideration of a premium paid to him,

agrees to indemnify the other party, called the 'reinsured,' against the risk insured by the latter by a policy in favor of a third person; the contract that one insurer makes with another to protect the first from a risk that he has already assumed; a new contract by which an insurer contracts for its own protection against liability in whole or in part for losses which it may suffer under risks which it continues to carry."

The foregoing definitions of ordinary reinsurance contracts have found approval in numerous adjudged cases. Phillips Ins. § 374; Commercial Mut. Ins. Co. v. Detroit F. & M. Ins. Co., 38 Ohio St. 11, 16, 43 Am. Rep. 413; Fame Ins. Co.'s Appeal, 83 Pa. 396; Royal Ins. Co. v. Vanderbilt Ins. Co., 102 Tenn. 264, 267, 52 S. W. 168; Eagle Ins. Co. v. Lafayette Ins. Co., 9 Ind. 443; London Assur. Corp. v. Thompson, 170 N. Y. 94, 62 N. E. 1066; Goodrich's Appeal, 109 Pa. 523, 2 A. 209; Ruohs v. Traders' F. Ins. Co., 111 Tenn. 405, 78 S. W. 85, 102 Am. St. Rep. 790; Cal. State L. Ins. Co. v. Kring (Tex. Civ. App.) 208 S. W. 372; Allemannia Fire Ins. Co. v. Baltimore Firemen's Ins. Co., 209 U. S. 326, 28 S. Ct. 544, 52 L. Ed. 815, 14 Ann. Cas. 948.

The question now recurring is: Was the reinsurance contract made by the defendant National Liberty Insurance Company with the United States Fire Insurance Company, covering the plaintiff's policy, an ordinary reinsurance contract, within the above definitions, or were its terms such as to show that its purpose was to include a promise or agreement on the part of the reinsurer to assume and to pay to the policyholders any losses as might occur under the original policy?

█ If the contract entered into by and between the two defendants was merely an ordinary reinsurance contract, the decisions are well-nigh uniform in holding that there is no privity between the reinsurer and those originally assured, and in a suit against the reinsurer brought by the policyholder, there could be no recovery. For cases so holding, see the annotation to the reported case of Globe National Fire Ins. Co. v. American Bonding & Cas. Co., 198 Iowa, 1072, 195 N. W. 728, 200 N. W. 737, 35 A. L. R. 1341, where the cases from the several state courts, as well as of the United States Supreme Court, are listed.

█ But was the contract of reinsurance in this case an ordinary reinsurance contract, in fact, a contract of indemnity only? We are fully persuaded that this reinsurance contract went far beyond mere indemnity, and that the reinsurer, in fact, assumed the liability of the United States Fire Insurance Company upon the policy issued by its Gadsden agency, and agreed not only to pay the losses, if any, to the policyholders, but in the contract the reinsurer obligated itself to "take charge of and adjust and pay same without expense to the United States Fire Insurance Company." Further, the reinsurer not only bound itself to bear all losses that might occur under any of the policies reinsured, but it agreed to be bound by the terms and conditions of said policies. In such circumstances, what are the rights of the plaintiff, the original insured, with respect to said reinsurance contract? Did the reinsurer make the contract of insurance issued by the United States Fire Insurance Company to the plaintiff his own contract, and thereby assume and agree to pay plaintiff whatever loss that might arise from the destruction of plaintiff's house by fire occurring within the lifetime of the original policy, and of the reinsurance contract?

In the case of Whitney v. American Ins. Co. et al., 127 Cal. 464, 470, 59 P. 897, 899, it is said with respect to a reinsurance contract: "'A contract of reinsurance is one by which an insurer procures a third person to insure him against loss or liability by reason of such original insurance.' Civ. Code, § 2646. The facts in this case show the contract in question to be much broader than a mere technical reinsurance. In Arnold v. Lyman, 17 Mass. 400 [9 Am. Dec. 154], it is said: 'The promise being, not to Hutchins expressly, but general in its form, the assent of the creditors made them parties to the promise; and this assent is sufficiently proved, as respects the plaintiffs, by their bringing an action upon the contract.' See, also, Morgan v. Mining Co., 37 Cal. 534; Flint v. Cadenasso, 64 Cal. 83, 28 P. 62; Lockwood v. Canfield, 20 Cal. 126. The finding of the court that under the said agreement between the companies defendant the Northwestern National Insurance Company assumed and undertook the care, control, and management of the business and risks of the said American Insurance Company in this state, including the policy of insurance

sued on, herein, is fully supported by the evidence. The holders of policies issued by the American Company in this state could avail themselves of said promise and undertaking made for their benefit by the Northwestern Company, and, as said in the cases cited, the bringing of suit is sufficient evidence of assent on the part of the plaintiff to said agreement and undertaking. *The law creates the privity necessary for the maintenance of the action. The Northwestern was jointly liable with the American on said policy, and the proof of loss was sufficient.*" (Italics supplied.)

It will be noticed that the reinsurance contract in the above-cited case is really no broader in its terms than is the reinsurance contract in the case now before the court.

In Barnes v. Hekla Fire Ins. Co., 56 Minn. 38, 57 N. W. 314, 45 Am. St. Rep. 438, it was said:

"It will be conceded that the agreement between the two companies set out in the answer is not merely a contract of reinsurance, but also to pay, and assume the payment of, losses of parties indemnified by policies issued by the defendant company reinsured. Reinsurance is a mere contract of indemnity, in which an insurer reinsures risks in another company. In such a contract the policy holders have no concern, are not the parties for whose benefit the contract of reinsurance is made, and they cannot, therefore, sue thereon. But the agreement alleged in this case is not a mere reinsurance of the risks by the reinsurer, but it embraces also an express agreement to assume and pay losses of the policy holder, and is therefore an agreement upon which he is entitled to maintain an action directly against the reinsurer. Johannes v. Phenix Ins. Co., 66 Wis. 50, 27 N. W. 414, [57 Am. Rep. 249].

"This is not, however, a case where the insurer is put to an election between his remedies against the two companies. * * *

"A creditor is put to an election only where his remedies are inconsistent, and not where they are consistent and concurrent. In the latter case a party may prosecute as many as he has, as in the case of several debtors. And so, if, in this instance, the remedy against the insolvent company, as respects the plaintiff, was merely cumulative, there is no reason why she might not pursue either or both. * * *

"The same rule of procedure is held applicable, though not uniformly, where the grantee of a mortgagor assumes in his deed to pay off the incumbrance.

"The mortgagee may proceed by action directly against the grantee, but the mortgagor still remains liable, and is held to occupy the relation of surety for the grantee, who, as between them, becomes the principal debtor. Thorp v. Keokuk Coal Co., 48 N. Y. [253], 257, 258; Klapworth v. Dressler [13 N. J. Eq. 62], 78 Am. Dec. [69], 76, 77, note."

In the case of Southern States ·Fire Ins. Co. v. Hand-Jordan Co., 112 Miss. 565, 73 So. 578, it was held: That "a contract whereby an insurance company reinsured another company which had issued an employer's liability policy to plaintiff for all of its outstanding liabilities, and agreed that any liability or expense under the former company's policies would be assumed and paid, was more than a contract of reinsurance, and was made for the benefit of the insured, rendering the second company liable to the insured."

In the last-cited case, the reinsured sued both companies, the reinsurer and reinsured, and the court sustained judgment, on appeal, against both defendants.

In 24 Am. & Eng. Ency. of Law (2d Ed.) 254, the principle is stated broadly: "While as a general rule, the liability of the reinsurer is solely to the reinsured, it is competent for the reinsurer to make the reinsurance contract inure directly to the benefit of the party originally insured, and in jurisdictions where a third party is allowed to maintain an action on a contract made for his benefit he may, in such a case, recover directly from the reinsured. Thus, where in reinsuring risks for which policies are outstanding, the reinsurer contracts with the reinsured to assume the policies and to pay the holders thereof all such sums as the reinsured may become liable to pay, the persons to whom these original policies are payable acquire a direct right of action against the reinsurer, and can sue in their names, and recover upon the contract of reinsurance, and it is immaterial that they are not named in the policy or contract."

The Supreme Court of Tennessee in the case of Ruohs v. Traders' Fire Ins. Co., 111 Tenn. 405, 78 S. W. 85, 102 Am. St. Rep. 790, gave its approval to the above

statement of the law by the author in 24 Am. & Eng. Ency. of Law (2d Ed.).

In the case of Meyer v. National Surety Co., 90 N. J. Law, 126, 100 A. 164, 165, the Supreme Court of New Jersey observed of a contract of reinsurance, no broader in its terms than the contract brought forward in this case: "When a company reinsures all the risks and agrees that all losses ensuing under the policies shall be borne, paid, and satisfied by the reinsuring company, it has been held that a policy holder in the first company might maintain an action against the reinsuring company to recover a loss on property covered by a policy of the first company. Johannes v. Phenix Ins. Co. of Brooklyn, 66 Wis. 50, 27 N. W. 414, 57 Am. Rep. 249; May on Ins. vol. 1, § 12; Richards on Ins. (3d Ed.) page 445; 14 R. C. L. p. 1452, § 618; 10 L. R. A. 424; 8 L. R. A. (N. S.) 862. It is always competent for the reinsuring company to agree to be directly liable to the original policy holder. As we read the reinsurance agreement, that is what the defendant company in this case agreed to do. The case cited by the appellant, in our Court of Errors and Appeals (Styles v. F. R. Long Co., 70 N. J. Law, 301, 57 A. 448), has no application to the facts under discussion."

In the case of Glen v. Hope Mutual Life Ins. Co., 56 N. Y. 379, the court observed of a reinsurance contract then before it: "By the agreement mentioned, the defendant [reinsuring company] agreed to reinsure the Craftsmen's Life Assurance Company on all risks for which its policies were outstanding at that date; and, also, to assume all such policies, and to pay to the holders thereof all such sums as the said company might, by force of such policies, become liable to pay." It was held under this agreement the policyholder could sue and recover of the reinsuring company.

In the case of Shoaf v. Palatine Ins. Co., 127 N. C. 308, 37 S. E. 451, 80 Am. St. Rep. 804, the reinsuring company agreed to assume all liabilities under any outstanding policies of the reinsured then existing, and on any policy that might be written thereafter by the reinsured for the benefit of and under the direction of the reinsuring company, and the reinsuring company assumed all expenses and taxes connected therewith, and all of said risks and policies were reinsured by the Palatine Insurance Company, the reinsurer. The Supreme Court of North Carolina held that this agreement inured to the benefit of the policyholders. The court sustained a recovery by the original policyholder against the reinsurer.

Much stress is laid by the appellants upon the case of Vial v. Norwich Union Fire Ins. Society, 257 Ill. 355, 100 N. E. 929, 44 L. R. A. (N. S.) 317, Ann. Cas. 1914A, 1141. While the contract of reinsurance in this case bears some similarity to the contract before us, yet there is quite a difference in the language of the two contracts, and also in the meaning of the same, as well as a distinction in legal effect between the obligation of the reinsurer in the Vial Case, supra, and the reinsurer in the instant case. The court in the Vial Case clearly recognized the fact that a reinsurer could make itself liable to the reinsured by extending the terms of its contract beyond the terms of an ordinary reinsurance contract. The court held in the Vial Case that the contract was merely one of indemnity.

There is certainly nothing in the case of Morris & Co. v. Skandinavia Ins. Co., 279 U. S. 405, 49 S. Ct. 360, 73 L. Ed. 762, 766, which deals with a reinsurance contract like the one now before the court.

In our own case of Empire Life Ins. Co. et al. v. Landman, 213 Ala. 248, 104 So. 425, 426, it was observed, in an opinion by Thomas, J.: "In Travelers' Ins. Co. v. California Ins. Co., 1 N. D. 151, 45 N. W. 703, 8 L. R. A. 769, the general statement is contained (in the third headnote) to the effect that, where the loss or risk of the original assurer is assumed by another, 'the original assured may sue upon such contract as having been made for his benefit.' 25 Cyc. p. 782, § 2. This is but another application of the rule, obtaining in this jurisdiction, that a third person may sue upon a contract made for his benefit, if such benefit became a part of the consideration of said contract. That is to say, the beneficiary may elect to accept the benefit therein promised and secured to him, and his assent or acceptance may be manifested by resorting to an appropriate remedy, at law or in equity, for the enforcement of such provision of the contract inuring to his benefit. Carver v. Eads, 65 Ala. 190; Young v. Hawkins, 74 Ala. 370; Ala. City, G. & A. R. R. Co. v. Kyle, 202 Ala. 552, 81 So. 54; Woodruff v. Satterfield, 199 Ala. 477, 74 So. 948; Interstate Land & I. Co. v. Logan, 196 Ala. 196, 72 So. 36."

We deem it unprofitable to pursue this particular question further. We hold that the reinsurer, the National Liberty Insurance Company, by its contract of reinsurance assumed and agreed to pay the loss covered by plaintiff's policy issued by the United States Fire Insurance Company; that the terms of the reinsuring contract were such as to authorize action thereon by the plaintiff.

It is also clear that the plaintiff could under the original policy and the reinsurance contract bring his action against both the reinsurer and the reinsured to recover his loss covered by the original policy. People's Savings Bank of Tallassee et al. v. Jordan, 200 Ala. 500, 76 So. 442; Whitney v. American Ins. Co., 127 Cal. 464, 59 P. 897; Fed. Life Ins. Co. et al. v. Petty, 177 Ind. 256, 97 N. E. 1011.

It is our further conclusion that, by the contract of reinsurance, the original insurer duly, and fully, authorized and empowered the reinsuring company to adjust all losses occurring under the policies reinsured, and fully justified the original insured, the plaintiff, to treat wholly with the reinsurer in making the adjustment, and that notice to the reinsurer would be notice to the original insurer; that waiver by the reinsurer of proofs of loss would not only bind the National Liberty Insurance Company, but would also be binding upon the original insurer, the United States Fire Insurance Company.

It is clear to our mind that the contract of reinsurance contemplated that all matters of adjusting losses, receiving notice and proofs of loss should be handled by the reinsurer. Federal Life Ins. Co. v. Petty, 177 Ind. 256, 97 N. E. 1011.

There was evidence offered by the plaintiff on the trial of the matters presented by defendants' pleas in abatement, the replications thereto, and defendants' rejoinders, tending to support plaintiff's fifth and sixth replications, as amended.

We note, however, in brief filed by appellants, that it is asserted that there is nowhere in the record of the testimony given on the trial of the dilatory pleas, any evidence to the effect that the adjuster Gantt "agreed to pay Thomas Smith anything." That "to the contrary, the undisputed testimony is to the effect that Gantt continuously refused to agree to pay Thomas Smith anything *and denied liability*. This testimony is uncontradicted."

On this point, we take the following from the bill of exceptions (page 125), showing testimony of plaintiff, Thomas Smith, on the trial of dilatory pleas, touching his conversation with Gantt, the adjuster:

"Q. Well, now at the time he told you that had you signed any agreement? A. No, sir, I had not.

"Q. After you agreed on the value of the house, state whether or not he said what the company would pay you, if anything? A. He told me that the company would pay me nine hundred dollars, and that I would get a check in a few weeks.

"Q. That you would get a check in a few weeks? A. Yes, sir, that is what he told me.

"Q. Did he tell you how the check would be made? A. Yes, sir, he told me, he said now, he said Tom, he said that check will come and you can't cash it until Mr. Hecht signs it and Mr. Hecht can't cash it until you sign it.

"Q. What did you tell him? A. I told him all right."

The appellants are therefore mistaken in their assertions in brief that there was no evidence to "the effect that the adjuster Gantt agreed to pay Thomas Smith anything."

The evidence on the above point was sufficient to carry replications 5 and 6 as amended to the jury.

The testimony of Thomas Smith tends to show that the adjuster made an unqualified promise, during the conversation had between them in the adjuster's room in the Reich Hotel (to which plaintiff had been invited by the adjuster), to pay the policy loss. That the promise was made in such terms and in such way as to amount to a waiver of the claimed breach of the terms of the policy.

In the case of Tedder v. Home Ins. Co., 212 Ala. 624, 627, 103 So. 674, 677, it was observed: "There is perhaps some confusion in the language of our cases with respect to what conduct on the part of an insurance adjuster, who has full knowledge thereof, will or may operate as a waiver of breaches of the policy, though all of them seem to agree that treating the policy as valid, or as being still in force, will have that effect. Queen Ins. Co. v. Young, 86 Ala. 424, 430, 5 So. 116, 11 Am. St. Rep. 51; Georgia Home Ins.

Co. v. Allen, 119 Ala. 436, 24 So. 399; Id., 128 Ala. 451, 30 So. 537."

The testimony of the plaintiff tended to show that on the 15th day of November, 1932, Gantt, an adjuster for the National Liberty Insurance Company, made an investigation of the fire loss, questioned the plaintiff during the investigation that day; that he arranged to have the plaintiff to meet with him at his room in the Reich Hotel on the following afternoon; that during the conversation on that afternoon, in the presence of a Mr. Hecht, mortgagee, the adjuster discussed the investigation and adjustment with plaintiff, and agreed to pay plaintiff $900 to cover the loss, and went so far as to tell plaintiff how the check for the money would come to him; that it was during this conversation, after the adjuster had agreed to pay plaintiff the loss, the plaintiff signed the nonwaiver agreement. The plaintiff testified that the nonwaiver agreement was not read to him.

This testimony tended to show a clear and unequivocal recognition of the validity of the policy and the waiver of any breach thereof, and also to waive necessity for filing of proofs of loss. The said adjuster then knew of the alleged mortgage foreclosure proceedings, the sole ground upon which to assert that there had been a breach of the policy contract.

It is here to be noted that there is no evidence in the record showing, or tending to show, that Gantt, the adjuster, was, in fact, appointed by the defendant, United States Fire Insurance Company, or that any notice was given to it of the occurrence of the fire, nor that any proof of loss was ever furnished the said named defendant, or that said named defendant waived furnishing of such proofs. The evidence tends to show that the said adjuster was acting by authority of the National Liberty Insurance Company; that whatever notice was given of said fire was given to the reinsurer; that if the furnishing of proof of loss was in fact waived, it was waived by the said reinsurer.

The insistence in part of United States Fire Insurance Company is that much of the evidence introduced on the trial of the issues involved in the dilatory pleas was, as to it, res inter alios acta, and that it was not bound by anything done or said by the adjuster appointed by the reinsurer. There were grounds of objections to certain portions of the evidence, which we

deem it unnecessary to mention in the view we take of the case.

Our conclusion, heretofore announced, as to the meaning of, and the construction properly to be placed on the reinsurance contract, will serve to demonstrate that there is no merit in any of the exceptions reserved by the defendants, or by either one of them, on admission of evidence upon the trial of the dilatory pleas. The defendant, United States Fire Insurance Company, had delegated full power to the reinsurer to make adjustments of losses, occurring under the reinsured contracts, and this delegation of power included, necessarily, the power to appoint adjusters, and to bind the original insurer by all that might be done or said by such adjusters, within the line and scope of their authority as such. As such adjusters, they had the right to waive formal proofs of loss. Liverpool & London & Globe Ins. Co. v. Tillis, 110 Ala. 201, 17 So. 672; Penn. Fire Ins. Co. v. Draper, 187 Ala. 103, 65 So. 923.

■ Likewise, a general denial by the adjuster of liability under the terms of the policy, made within the time given in the policy, for filing proofs of loss is a waiver of proof of loss. The law does not require one to do a vain and useless thing. Rhode Island Ins. Co. v. Holley, 226 Ala. 320, 321, 146 So. 817.

■ It is to be noted that the defendants, in their separate special rejoinders setting up the "non-waiver agreement," aver "that prior to making an investigation on the loss of the plaintiff *in this suit,* on which this suit is filed; and prior *to any conferences* and discussions of said losses with the said Thomas Smith, the defendant, acting by and through its adjuster secured the following agreement which is in words and figures as follows" (here follows agreement and signatures of parties).

The testimony of the plaintiff tended to show that the above statement was not true; that the agreement was not suggested, or made until after the adjuster had investigated the loss, and all facts with reference thereto, and had agreed to pay the claim; that the agreement which was signed by Thomas Smith, the insured, was neither read to, or by, him. The evidence shows that the plaintiff is a negro man, and a very ignorant one. The testimony tended to show that he did not even know

what constituted proof of loss. Of course, the plaintiff's failure to read the waiver would not excuse him unless he was fraudulently misled by the promise to pay.

The burden of proof rested upon the defendants to establish each material allegation of these rejoinders.

We are fully persuaded, upon a consideration of the evidence submitted on the trial of the dilatory pleas, that neither of the defendants was entitled to the general affirmative charge. That the evidence made a jury case on the issues.

 The defendants each excepted to portions of the court's oral charge. The exception reserved appears as follows in the bill of exceptions: "Thereupon in the presence of the jury and before the jury retired, the defendants, separately and severally, duly and legally excepted to the following portions of the court's oral charge to the jury on the issues on the plea in abatement."

This shows but a single exception by each of the defendants to the portions of the court's oral charge. If any portion of the charge excepted to is good, the exceptions must fail.

 Certainly there can be no just criticism of the following portion of the oral charge excepted to, under our construction of the reinsurance contract: "And I also charge you that if you are reasonably satisfied from the evidence that an adjuster was sent here by the National Liberty Insurance Company as the agent of that company with full authority to investigate and adjust the loss, that reading the two policies of insurance together, the act of that adjuster although sent by the National Liberty Insurance Company, would also be binding upon the United States Fire Insurance Company, that the two policies are to be considered together, and that the act of that adjuster, if he was adjuster of the National Liberty Insurance Company, and authorized to bind them in and about the matter would also be binding upon the United States Fire Insurance Company. And then the question comes up, what do you, what are the * * * what is the proof in this case upon these various issues."

In the foregoing opinion, we have treated all questions which would seem to be of sufficient merit to require notice.

We are at the conclusion that the court committed no error in any of its rulings on the trial of the dilatory pleas.

After the jury had found the issues involved in the pleas of abatement against each of the defendants, a trial was then had upon the merits, which also resulted in a verdict against both defendants.

The defendants separately demurred to each count of the complaint, but these demurrers were overruled by the court.

The defendants argue here that the complaint, in each count, fails to show (a) any privity of contract between the plaintiff and the National Liberty Insurance Company; (b) that each of the counts contain more than one cause of action, in that they are predicated upon two separate causes of action, made at separate times and between separate parties wholly unrelated; and (c) that there is a misjoinder of causes of action, and a misjoinder of parties defendant.

What we have said heretofore in this opinion will serve to demonstrate our conclusion with respect to these insistences on the part of the defendants. If the contract of reinsurance was merely an ordinary reinsurance contract—one of indemnity only —there would be merit in the defendants' contention, but we have construed the contract otherwise, that it was broader than an ordinary contract of reinsurance, and that it inured to the benefit of the original insured, and that he could sue thereon, the law supplying the necessary privity between the parties. Nor was there any misjoinder of parties defendant. Authorities supra.

We therefore hold that the court properly overruled each of the defendants' demurrers, as for any grounds assigned, and here insisted upon.

With their demurrers overruled, the defendants filed, separately and severally, three pleas, the first two being the general issue in different form, and the third, a special plea, setting up a breach of the insurance contract, in that, in violation of the terms of the policy, with knowledge of the insured, foreclosure proceedings had been commenced by "the mortgagee or his agents or notice given of sale of property covered by the policy sued on by virtue of a mortgage thereon, prior to the date of the said fire." The plaintiff filed a number of replications to this third plea. These replications set up a waiver or estoppel against the defendants. To some

of them the court sustained demurrers, but overruled the demurrers to special replications 1, 2, 3, 4, 5, and 6.

The defendants then filed a rejoinder, setting up the nonwaiver agreement.

In the view we take of the evidence in the case, it is unnecessary to determine whether any of the plaintiff's replications were defective or not, for the evidence wholly failed to sustain the material allegations of the defendants' third plea, to which the replications were filed, while the evidence supports each and every material allegation of both counts of plaintiff's complaint.

 It is true the defendant was at first allowed to read in evidence the notice published in the Gadsden Times of the proposed sale of plaintiff's property by the mortgagee, in foreclosure of the mortgage, but there is no evidence in the record that plaintiff ever saw the paper or heard of the advertisement.

The defendants having failed to offer any evidence tending to show that the plaintiff ever saw the paper carrying the advertisement, or that he had any knowledge of the foreclosure proceedings, or any notice thereof, except such constructive notice as the publication might give him, the court, after the conclusion of the evidence, and both sides had rested, on motion of the plaintiff, excluded the notice that was published in said newspaper.

This action of the court left defendants without any evidence in the case tending to support their third plea.

The defendants each excepted to the above ruling of the court. The exception is without merit. The policy contract, in respect to foreclosure proceedings, only provided that it should become void in the event such proceedings were commenced *"within the knowledge of insured."*

While we have no direct authority in any decision of this court on this point, such a provision has been considered and construed by other courts.

In 26 Corpus Juris § 299, p. 239, the following statement is made by the author: "The standard policy requires the commencement of the proceedings to be with the knowledge of the insured, and in the absence of such knowledge the policy is not avoided. This does not mean that the insured must have such knowledge at the time the proceedings are commenced; it is enough if he has knowledge at any time before the loss; and service of process charges insured with such knowledge. The knowledge must be actual as distinguished from constructive knowledge or notice."

In the case of Funk v. Anchor Fire Ins. Co., 171 Iowa, 331, 153 N. W. 1048, 1052, it was said: "Defendant seeks to avoid the policy on this ground. [If, within the knowledge of the insured, foreclosure proceedings be commenced, or notice given of the sale of any property covered by this policy, by virtue of any lien or incumbrance thereon.] It will be noted that the provision of the policy relied upon is that it shall be void in the event that foreclosure proceedings are commenced, or notice of sale given, with the knowledge of the insured. * * * There was no personal service of any notice upon him in the suit. There is no evidence that he [insured] had any knowledge of the commencement of this suit. Defendant, having prepared this policy and these conditions upon which a right to forfeiture is predicated, must be held to have chosen the words advisedly, and must be held to have used the word 'knowledge,' as distinguished from constructive notice, advisedly, with the intent to limit the right of forfeiture to those cases in which the insured had knowledge of the commencement of the foreclosure proceedings, or what has been sometimes held equivalent, actual notice. That the word 'knowledge,' as used in the contract, means actual knowledge, as distinguished from constructive knowledge, or constructive notice. See Fidelity & Casualty Co. v. Gate City National Bank, 97 Ga. 634, 25 S. E. 392, 33 L. R. A. 821, 54 Am. St. Rep. 440. That knowledge and notice are not synonymous or interchangeable, see 5 Words and Phrases, [First Series], 3941."

To the same effect is the holding of the same court in the case of Dodge v. Grain Shippers' Mut. Fire Ins. Ass'n, 176 Iowa, 316, 157 N. W. 955.

In the case of Brown v. Conn. Fire Ins. Co. of Hartford, Conn., 197 Mo. App. 317, 195 S. W. 62, 65, which involved a provision identical with the one contained in the policy sued on in this case, it was said by the St. Louis Court of Appeals:

"It is a well-recognized rule of law in this state that a provision in a policy of insurance such as the one under discussion must be given as favorable a construction to the insured as is reasonably

possible, and the ground upon which this rule rests is that such provisions are put in the policy at the direction of the insurance company for its protection and benefit, the policy being issued as the business of and for the profit of the company. Mathews v. Modern Woodmen, 236 Mo. 326, 139 S. W. 151, Ann. Cas. 1912D, 483; Rochester Mining Co. v. Maryland Casualty Co., 143 Mo. App. 555, 128 S. W. 204; Century Realty Co. v. Frankford Marine, Accident & Plate Glass Ins. Co., 179 Mo. App. 123, 161 S. W. 624; Stix v. Travelers' Indemnity Co., 175 Mo. App. 171, 157 S. W. 870; Long Bros. Gro. Co. v. U. S. F. & G. Co., 130 Mo. App. 421, 110 S. W. 29.

"Webster's Dictionary defines 'knowledge' as: 'The act or state of knowing; clear perception of fact, truth, or duty.'

"In the Century Dictionary we find this definition: 'The state of being or having become aware of fact or truth; intellectual recognition of or acquaintance with fact or truth.'

"Knowledge, then, is information, meaning having information as to a fact. Viewing the word 'knowledge' in the clause in the insurance policy in question in light of these definitions, the clause applies where the insured has actual knowledge of the foreclosure proceedings having been commenced, or notice given of the sale of the property insured under a deed of trust."

The defendants wholly failed to prove one of the material allegations of its special plea, and the plaintiff, having offered evidence tending to support each material averment of the complaint, was entitled to recover in the case, and the court was warranted, under the evidence, in giving the jury the general charge, with hypothesis, for plaintiff. Consequently, the general charges requested by the defendants were properly refused.

We are also of the opinion the court below properly overruled defendants' motion for new trial.

We have given consideration to all errors assigned by defendants, and here insisted upon, and finding no reversible error in the record, the judgment of the court below will be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.